Elizabeth S. Salter, Administratrix, etc., Respondent, v. Utica and Black River Railroad Company, Appellant.

It is the duty of a traveler upon a highway approaching a railroad crossing before he passes over to exercise a proper degree of care and caution, and to make a vigilant use of his eyes and ears for the purpose of ascertaining whether a train is approaching; and if by a proper use of his faculties he could have discovered the approach of a train and so have escaped injury, and fails to do so and is injured he is chargeable with contributory negligence, and cannot maintain an action against the railroad corporation.

If driving a team the same principle requires the traveler to so use his faculties in managing his team as to keep out of danger.

The fact that a train is behind time does not relieve the traveler of this duty of care and caution; railroad corporations have the right to run trains at all times, and those having occasion to cross their tracks are entitled to no exemption from care and vigilance because trains are irregular or extra trains are put on.

In an action to recover damages for the alleged negligence of defendant, causing the death of plaintiff's intestate, who was killed at a railroad crossing it appeared, in substance, that the deceased lived in the vicinity and was familiar with the railroad, that for some weeks prior to the accident he had been engaged in drawing logs, which necessitated his crossing defendant's tracks, and he had been accustomed to cross at the place where he was killed. There was a slight descent in the road as he approached the crossing, but immediately adjacent where another street run parallel with the tracks the surface was level and there was room to turn a team, and this could be done within twenty-one feet of the tracks. There were buildings obstructing the view of one approaching, but from a point 100 feet from the crossing trains could be seen approaching. Plaintiff's testimony was to the effect that the deceased approached the crossing sitting sideways on his load at a slow trot until within twenty-five or thirty feet, when apparently hearing some noise he looked northerly along the tracks and then turned and looked southerly from which direction the train was approaching, then tried to stop his team and jumped from his load, was struck by the train and killed. The rumbling of the train was distinctly to be heard from a point 1200 feet distant. The day was cold and the ears of the deceased were covered up. The train which was a regular one was behind time. *Held*, that the evidence showed contributory negligence and plaintiff should have been nonsuited; that if the deceased had given due attention he could have heard and seen the train in time to have escaped injury.

Upon the trial defendant's counsel requested the court to charge that it was negligence on the part of the deceased, if he approached the cross-

ing at such speed as to be unable to stop or turn his horses aside before actually going on the track. The court so charged with the qualification, that if he so approached without making an effort to apprehend the approach of the train. *Held*, error; that under the circumstances as disclosed by the evidence, defendant was entitled to the charge as requested without any qualification.

*Salter* v. *U. and B. R. R. R. Co.* (13 Hun, 187), reversed.

(Argued November 11, 1878; decided November 26, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 13 Hun, 187.)

This action was brought to recover damages for the alleged negligent killing of plaintiff's intestate.

Memorandum of decision on former appeal. (59 N. Y., 14.)

On the day of the accident the deceased was drawing logs on a bob-sled to a saw-mill in Carthage, and to reach it he was obliged to cross defendant's track, which runs north and south through the village. The saw-mill is on the west side of the track; the deceased had been engaged in the same business for several weeks prior to the accident. To reach the track he drove down Furnace street, which runs east and west; at the upper end of the street is a hill, having a descent of some nineteen feet; in the space of some 200 feet from the foot of the hill to the railroad crossing there is a slight descent, but the road is nearly level; before reaching the track he crossed Mechanic street which runs parallel with the track on the easterly side thereof. The deceased was sitting sideways on the load, his legs on the south side. The train approached from the south, the horses crossed the track uninjured, the train struck the sleigh, the deceased was seen to jump from the load on the south side just before the train struck it, he was run over and killed.

The further material facts appear in the opinion.

*Francis Kernan* and *E. A. Graham*, for appellant. It cannot, in the absence of evidence, be presumed that the

deceased was free from fault. (*Reynolds* v. *N. Y. C. R. R.*, 58 N. Y., 248, 250, 252; *Wild* v. *H. R. R. R. Co.*, id., 430–432; *Warner* v. *N. Y. C. R. R.*, id., 470, 471.) The deceased was bound in approaching the crossing to make vigilant use of his eyes and ears to ascertain if a train was approaching, and if by doing so he could have avoided the collision, plaintiff cannot recover. (*Wilcox* v. *Rome, etc., R. R.*, 39 N. Y., 358, 366, 367; *Davis* v. *N. Y. C. R. R.*, 47 id., 400; *Wilds* v. *Hud. R. R.*, 24 id., 431; *Mitchell* v. *N. Y. C. R. R.*, 64 id., 655; *McGrath* v. *N. Y. C. and H. R. R. Co.*, 59 id., 468–471; *Railway* v. *Houston*, 95 U. S. R., 697; *Haslan* v. *St. Louis, etc., R. R. Co.*, 64 Mo., 480, *Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y., 465–469–470.) If the deceased saw the train and thought he could recover and attempted to cross the track before it reached the crossing a recovery cannot be had. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y., 465, 470.) If the mode in which the deceased was dressed prevented his hearing the train that did not relieve from the consequences of contributory negligence. (*Salter* v. *Utica and B. R. R. R. Co.*, 59 N. Y., 632; *Wilcox* v. *Rome and Watertown R. R.*, 39 id., 358, 367; *Mitchell* v. *N. Y. C. R. R.*, 64 id., 655.) The deceased was wanting in due care in not stopping his team before driving on to the railroad track and looking and listening for an approaching train. (*Penn. R. R. Co.* v. *Beal*, 73 Penn., 12; 23 Smith, 504; *Wilds* v. *Hud. R. R. Co.*, 24 N. Y., 430; *Wilcox* v. *Rome and Watertown R. R.*, 39 id., 358; *Davis* v. *N. Y. C. R. R.*, 47 id., 400.) The fact that the train was a few minutes late or was moving faster than was claimed did not relieve the deceased from the consequences of want of due care. (*Wilcox* v. *R. and W. R. R. Co.*, 39 N. Y., 358, 367; *Warner* v. *N. Y. C. R. R. Co.*, 44 id., 465, 469, 470.) The deceased was bound to use his eyes and ears to ascertain the approach of the train although the bell was not rung. (*Ernst* v. *H. R. R. R. Co.*, 39 N. Y., 61; *Wilcox* v. *Rome, etc., R. R. Co.*, id., 358; *Davis* v. *H. R. R. R. Co.*, 47 id., 400–402; *R. R. Co.* v. *Houston*, 95 U. S. R., 697.) It was the duty of the deceased

to approach the crossing at such speed and have his team under such control that he could have stopped or turned around when he saw the train approaching. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y., 430; *Wilcox* v. *Rome, etc., R. R. Co.*, 39 id., 358, 367; *Dows* v. *N. Y. C. R. R. Co.*, 47 id., 400; *Penn. R. R. Co.* v. *Beale*, 73 Penn., 504.)

*F. W. Hubbard*, for respondent. While the deceased was bound to exercise vigilance to avoid accident, the extent of such vigilance and his culpability must be measured somewhat by defendant's negligence. (*Weber* v. *N. Y. C. R. R. Co.*, 58 N. Y., 454; *Contl. Im. Co.* v. *Stead*, 5 N. Y. Wkly. Dig., 585; *Ernst* v. *N. Y. C. R. R. Co.*, 35 N. Y., 9.) The deceased was not bound to stop and reconnoitre before crossing defendant's track. (35 N. Y., 10; *Renwick* v. *N. Y. C. R. R. Co.*, 36 id., 134; *Mills* v. *Smith*, 8 Wal., 27; *Hagan* v. *Domes. Sewing Machine Co.*, 9 Hun, 73.)

MILLER, J. There was, we think, sufficient evidence of negligence of the defendant, upon the trial to warrant the submission of that question to the consideration of the jury ; and the judge committed no error in refusing to nonsuit upon any such ground. A more serious question arises, in regard to the contributory negligence of the deceased, and whether the evidence was sufficient to authorize the judge to take the case from the jury and grant the motion for a nonsuit.

The rule is well established that it is the bounden duty of a traveler approaching a railroad crossing, before he passes over the same to exercise a proper degree of care and caution, and to make a vigilant use of his eyes and ears, for the purpose of ascertaining whether a train is approaching ; and if, by a proper use of his faculties, he could have discovered the train and escaped injury, and fails to do so, he is chargeable with contributory negligence, and no recovery can be had. The question then presents itself, whether the intestate, if he had looked, or made efforts to do so, could have seen the

train, in season to have avoided the collision.  The deceased lived in the vicinity, was familiar with the railroad, and for some time, several weeks prior to the accident, had been engaged in drawing logs to a saw-mill located in the vicinity, on the west side of the railroad track.  He was obliged to pass over the railroad which crossed Furnace street, in the prosecution of his work, and on this occasion he had passed through several streets of the village into Furnace street, and from thence down the same to the crossing where he was killed.  Between a point on Furnace street, 181 feet east of the crossing, and the crossing, there was a descent of three and a-half feet, but for eighty feet next east of, and immediately adjacent to the crossing, the surface of Furnace and Mechanic streets, which crossed each other there, was substantially level, and there was room enough for a team to turn, if necessary.  As a person approaches the railroad from the east on Furnace street, a building called " Gregory's shop," on the southerly side of the street and the " Oberly House," on the south-westerly side of Mechanic street, obstruct the view of the railroad, and prevents seeing the same, to some extent.  According to the testimony of a surveyor, called by the plaintiff, at a point twenty-one feet from the crossing a person could see the railroad, up to Spring street, and the bridge, a distance of 1200 feet; and this is the nearest point from the railroad at which one can see the bridge.  At thirty-one feet from the crossing, one can see up the rail 251½ feet, and at forty-one feet, 203½ feet.

The defendant proved by a civil engineer that the railroad track could be seen, at various distances from the track, at a point on Furnace street commencing at twenty-seven feet to the railroad bridge 1200 feet, at thirty-seven, 249 feet and so on at different points up to 111½ feet, when it could be seen 159½ feet.  There is no conflicting evidence now, as was the case on the former appeal to this court, that at a point on Furnace street, at least 100 feet from the railroad, until he reached the track, the deceased could have seen trains approaching,

had he looked for that purpose. Within twenty-one feet of the track, had he stopped and looked in season, as he might have done, and turned his horses, he could have avoided the accident. If the case stood without any testimony to show what he did, there would be no hesitation in arriving at the conclusion that had the deceased looked, he must have seen the train, and was guilty of contributory negligence in failing to do so. (*Wilcox* v. *R. and W. R. R. Co.,* 39 N. Y., 358; *Reynolds* v. *N. Y. C. and H. R. R. R. Co.,* 58 id., 248, 252.) Within the decisions referred to, no action would lie. Nor is the plaintiff's case aided by the testimony introduced in his behalf upon the trial. There is some evidence as to what the deceased did just previous to the collision, but it fails, I think, to relieve him from the charge of contributory negligence, as will be seen by a reference to this testimony. One of the plaintiff's witnesses, Mosher, testifies that he saw the deceased come down Furnace street on a slow trot, about 200 feet from the rail at the crossing. The train was then not far from Spring street, south of it; and he came right along until within twenty-five or thirty feet of the railroad, and then acted or appeared as though he heard some sound; and he cast his eyes towards the depot northerly, and then turned immediately, and looked the other way southerly up the track, and tried to turn his team, and jumped from his load. This witness also states that he heard the rumbling of the train before he saw it on the bridge, some 1200 feet off; and it made a good deal of noise, and it was distinctly to be heard all the way down. Another witness, Ray, corroborates this testimony. He heard the roar and noise of the train, which was pretty loud, and saw it coming out of the bridge. He saw deceased as he came down Furnace street, at about Gregory's shop, the cars being about half-way between Spring street and the railroad bridge, and the team on a slow trot, until within fifteen or twenty feet of the rail; and then the deceased looked up the track towards the train, and jumped from the load. On his cross-

examination, he says he was within twenty-five or thirty feet of the track, and looked towards the depot north and then towards the railroad bridge southerly, and when the horses were at the track he jumped from the load; and that as he passed towards the track, his back was towards the witness, and he thought he saw the train.

The testimony, to which we have referred, fails to establish that the deceased made vigilant use of his eyes and ears to avoid the train. The noise of the train was heard by both these witnesses when it was on the bridge, and continued all the way down, some 1200 feet; and the train must have been in plain sight when the deceased passed Ray, who stood on Mechanic street, in front of the Carthage Iron Co.'s office; and, although the day was cold and the deceased's ears were covered up, it is hardly to be presumed that he could not hear the noise of the train. He could see the railroad, at various distances, as we have seen, and where he jumped off, clear up to the bridge. Assuming that he was within twenty-five or thirty feet of the rail when he first heard the train, he still had an opportunity to look up and down to see if the cars were approaching. If he had been traveling on a slow trot, it would have been an easy matter to hold up his horses and stop for the train to pass. At any rate he was bound to look where he was; and in failing to do so, was clearly negligent. Even at such a distance, unless horses are driven at an extraordinary rate of speed, there could be no difficulty in exercising proper control over them; and no prudent man would drive a team so near, without looking to see whether the train was near, or so fast as to be unable to control them. The distance, at which a person crossing may be from the track, is not important so long as there is a chance and opportunity to take an observation. In *Haight* v. *N. Y. C. R. R. Co.* (7 Lans., 11), the plaintiff looked when leaving one track, and proceeded on to another, until she was struck; and it was held in the Supreme Court that she was negligent. In the case considered, if the deceased looked, it was so near the track that it was too late to avoid

the danger. That he failed to do so before, and in season to avoid the collision, was clearly negligent. It is also to be noticed that there is considerable evidence, on the part of the defense, tending to show that if the deceased had given due attention as he approached the crossing, he must have heard the noise of the train ; and if he had used his eyes he would have discovered the train, in time to have escaped the disaster. He was careless in not seeing or hearing, and stopping until it passed, or he saw it, and instead of stopping, tried to pass in front of it. In either contingency, he was guilty of negligence, and cannot recover. (*Warner* v. *N. Y. C. R. R. Co.,* 44 N. Y., 465; *Wilds* v. *H. R. R. R. Co.,* 24 id., 430, 431.)

Upon the trial, the defendant's counsel requested the judge to charge the jury that it was negligence on the part of the deceased, if he approached this crossing at such speed as to be unable to stop, or turn his horses aside, before actually going on to the track. The judge, in reply, said that if he had any apprehension of the approach of a train, most assuredly it was. The defendant's counsel then asked that the judge charge the proposition, without any qualification. The court then charged, with an additional suggestion, that if he approached at such speed that he was unable to control his team or stop it, without making an effort to apprehend the approach of the train, he was guilty of negligence. An exception was taken to the ruling of the court and the omission to charge as requested.

I think that the court erred in the refusal to charge, and that the defendant was entitled to the charge as requested, without any qualification. The proof shows, as we have seen, that in approaching the crossing on Furnace street, the deceased could not have seen any considerable portion of the railroad continuously between the crossing and the bridge beyond, until he reached a point near to the crossing, where the railroad could be seen at the distances already mentioned. As the view of the railroad was thus interrupted, until in the vicinity of the crossing, it was the dictate of prudence, and the exercise of a proper degree of care, that the deceased

should so drive his horses that they would be entirely under his control; and had he been, at the time of the accident, driving at a moderate rate of speed, he could readily have stopped his horses, and turned them towards Mechanic street, and thus have avoided a collision.

The deceased was warmly clad, his ears covered with earlaps from his cap, and he had a woolen comforter around his neck; and, for some distance, he was driving down hill on a trot, until near the railroad track. As he was proceeding, ordinary care demanded that he should so manage and take care of his team as to keep them under his control. Considering the circumstances of the case, the danger of crossing the track with his ears covered so as to obstruct the sound, and the obstructions to a full view of the railroad track, we think it was the duty of the deceased to approach the crossing in such a manner, and at such a rate of speed, and with such entire control over his team, that he could have stopped them if required. There is no rule which authorizes a person, who crosses a railroad track with a team of horses, to dash on recklessly or even carelessly into danger, without using all the means at his command to avoid the catastrophe; and no careful man will place himself in a position where, by want of vigilance, or by indiscretion, his team is not under his control. With the knowledge which the deceased had of the locality and from frequently crossing the same, and the other facts to which reference has been had, it was negligence on his part to drive towards the crossing, without being able to stop or turn his horses aside. The principle which requires that a man shall use his ears and eyes in crossing a railroad track, so far as he has opportunity to do so, equally demands that he shall employ his faculties in managing his team, and thus keep out of danger. The fact that the train was behind time does not relieve the deceased from the duty of being careful, for railroad crossings near villages are liable to be used at any time, without regard to the regular periods when trains are due. Railroad corporations have a right to run their road and trains at all times; and

those who have occasion to cross are entitled to no exemption from care and vigilance in seeing that the track is clear, because trains are irregular or extra trains are put on the road. The qualification made by the judge to the request made would have limited the duty of the deceased, in regulating the speed of the horses, entirely to his own apprehension as to the necessity of doing so. This was clearly erroneous.

Other questions were raised upon the argument, but as a new trial must be granted, for the reasons already stated, it is not necessary to examine them.

Judgment reversed and new trial granted, with costs to abide the event.

All concur. FOLGER and EARL, JJ., concur on ground that there was error in refusing request to charge as to keeping team under control, without expressing opinion as to other points.

Judgment reversed.