C. L. SEVERY, *Administrator of the Estate of* JOHN J. MAR-
LATT, *Deceased* v. THE CHICAGO, ROCK ISLAND &
PACIFIC RAILWAY COMPANY.

(Filed July 30, 1897.)

1. MOTION FOR NEW TRIAL—*When Filed in Time.* Where a jury re-
turn a general verdict in favor of a plaintiff and afterwards, and
upon motion of the defendant, the court sets aside such verdict
and renders a judgment for the defendant upon the facts as
found by the jury in answer to questions propounded by the
defendant, and the plaintiff files his motion for a new trial within
three days after the court sets aside such verdict and renders
its judgment in favor of the defendant, *Held:* the motion for a
new trial is filed in time.

2. FINDINGS OF FACT. While it may be true that some of the minor
facts, necessary to make up the ultimate fact are probative facts,
still a finding of probative facts is sufficient, if the court is en-
abled to say that the ultimate facts necessarily result therefrom.

3. THE FINDINGS OF FACT ARE A PART OF THE RECORD. The ver-
dict of the jury is, under our code, not limited by express terms
to the general verdict, but the jury may, in addition to the gen-
eral verdict, include findings upon particular questions of fact,
and upon such findings the court may render judgment, which is
practically, if not technically rendered upon the verdict of the
jury, and thereby findings of fact are taken into the record.

4. CONTRIBUTORY NEGLIGENCE. Where an action is brought to re-
cover for personal injuries, and the findings of fact as returned
by the jury in answer to special questions show that the negli-
gence of the party contributed directly to the injury, he cannot
recover.

5. RAILROAD TRACK—*Duty of Person in Crossing.* It is the duty of ·a
person about to cross a railroad track to make a vigilant use of
his senses, as far as there is an opportunity. A failure to listen
or look, when by taking this precaution the injury might have
been avoided, is negligence that will bar a recovery, notwith-
standing the negligence of the railroad company in failing to give
signals contributed to the injury. (*U. P. Ry. Co. v. Adams*, 33,
Kan., 427.)

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before Jno. H. Burford, District Judge.*

*Gillett & Libby,* for plaintiff in error.

*M. A. Low, W. T. Evans, John I. Dille,* and *A. A. Graham,* for defendants in error.

The facts are stated in the opinion.

Opinion of the court by

DALE, C. J.: This case comes up from Canadian county to reverse a judgment of the district court rendered in favor of the defendant in error. C. L. Severy, as administrator of the estate of John J. Marlatt, deceased, brought an action against the Chicago, Rock Island & Pacific Railway company to recover a judgment for an injury causing the death of John J. Marlatt, occurring at a crossing on the railway near the city of El Reno, in Canadian county. The petition of the plaintiff below claimed a recovery upon the ground of negligence upon the part of the railway company. The defense interposed a general denial and in addition thereto alleged contributory negligence. The case was tried to a jury and judgment awarded in the sum of $2,500, in favor of the plaintiff. Special interrogatories were submitted to the jury and upon the answers returned thereto the court upon motion set aside the verdict as returned by the jury, and rendered a judgment for defendant upon the answers of the jury to the special interrogatories.

Counsel for defendant in error insist that there is nothing before this court for review, because the motion for a new trial was not filed in time, and claim that inasmuch as such motion was not filed within three days

after the jury had returned their general verdict, that therefore it was too late. The motion was filed within three days after the court set aside the verdict and rendered the judgment upon the facts found by the jury upon the special interrogatories. As long as the verdict of the jury stood there was nothing upon which to base a motion for a new trial, and not until such verdict was set aside and a judgment rendered upon the special interrogatories or findings of fact as returned by the jury. The contention of counsel is untenable. The statute providing for motions for new trial has reference to final judgments or orders, and a motion for a new trial is a useless proceeding until there is a judgment to set aside or vacate.

Counsel for appellant has filed a very extended brief in which they attempt to show that the court below erred in rendering its judgment in favor of defendant upon the answers of the interrogatories as submitted to the jury and returning with their general verdict. The first contention raised goes to the right of the court to render any judgment upon the answers of the jury to the questions propounded. It is claimed that the facts elicited by such interrogatories are evidentiary facts, and not facts which go to make up the issue as joined by the pleadings, and that the court cannot infer the issuable fact from the evidentiary facts even though they justify the presumption. We think that the language of our statute upon this question is plain, and that a reading of the different sections following upon this subject will aid us very materially in reaching a conclusion upon this contention. Sections 4175, 4176, 4177, p. 812, Statutes of 1893, are as follows:

"4175. The verdict of a jury is either general or special. · A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, and not the evidence to prove them, and they must be so presented as that nothing remains to the court but to draw from them conclusions of law.

"4176. In all cases the jury shall render a general verdict, and the court shall in any case, at the request of the parties thereto or either of them, in addition to the general verdict direct the jury to find upon particular questions of fact to be stated in writing by the party or parties requesting the same.

"4177. When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

By the foregoing provisions it is plain that the legislature intended to permit either party to an action to submit to the jury any questions of fact which might be involved under the pleadings in the case, and where the answers to such questions shows or establishes a state of facts inconsistent with the general verdict, the finding of facts must control. What are the facts which may, under the pleadings in the case we are considering, be submited to the jury? The plaintiff alleged negligence against the defendant. The defendant denied, and asserted contributory negligence on the part of the plaintiff. How may the allegations of either plaintiff or defendant be established? It must be by the proof of facts which tend to prove negligence. Negligence is always a fact to be proved and found like other facts. Negligence, it may be said, is the broad or ultimate fact to be established. This ultimate fact can only be established by the proof

of minor or subordinate facts. The minor or subordinate facts which go to make up the broad or ultimate fact of negligence may also be subdivided, and such minor or subordinate facts be established by the proof, and as long as a question remains a fact susceptible of proof and material to the issue, then such question is a proper one under the provisions of our code to submit to a jury. It may be true that some of the minor facts necessary to make up the ultimate fact are probative facts, still a finding of probative facts is sufficient if the court is enabled thereby to say that the ultimate fact necessarily results therefrom. (*Coglan v. Baird*, 2 Pac. [Cal.] 770; *Miller v. Luco*, 22 Pac. [Cal.] 198; *N. W. Ry. v. Dunleavy*, 22 N. W. [Ill.] 17; *First Nat'l. Bank v. Peck*, 8 Kan. 660; *Foster v. Turner*, 31 Kan. 58.)

The testimony taken upon the trial of this case is not brought up, and we can only deal with the petition, answer, verdict, and the facts found by the jury in answer to the special interrogatories submitted. Counsel for defendant in error contends that the latter are not under the statute made a part of the record and cannot be considered, because not brought into the record by case made or bill of exceptions. No authority is cited in support of this contention and we think it untenable. The verdict of a jury is under our code not limited by express terms to the general verdict, but the jury may in addition to a general verdict include findings upon particular questions of fact, and upon such findings the court may render judgment. This judgment is practically, if not technically, rendered upon the verdict of the jury, and thereby the findings of fact are taken into record. (*Harvester Works Co. v. Cummings*, 26 Kan. 367.)

When the case went to the jury counsel for the defendant submitted to the jury seventy-four questions for answer.   These questions were framed apparently with a view to showing proper care upon the part of the agents and employes of the railway company in the operation of their train, and also to show contributory negligence upon the part of the deceased.   It would unnecessarily encumber the record to set forth in detail all of the questions submitted and answers thereto as returned by the jury.   Briefly stated the facts as we gather them show that the accident happened 1788 feet north of defendants' depot at El Reno, at 5 o'clock P. M. on July 2, 1894, at a crossing in general use, but not at a regularly established wagon road, on the defendant's track; the team and wagon of deceased colliding with defendant's regular north bound passenger train.   The crossing is in the outskirts and thinly populated part of El Reno.   The highway is eighty feet west of defendants' track, on defendants' right of way, and parallels the track for a distance of 1600 feet south of the crossing.   The wagon road forks forty-nine feet west of the crossing, one road extending north on the west side of the track, the other turning east and crossing the track at the place of the accident.   Defendants' train made the usual stop at the depot, and consisted of an engine, tender, baggage car and two coaches. The defendant had but one track at the crossing, and but one passing or side-track on the west side of the main track, the north end of which was 629 feet south of the crossing. ˙ Box cars were standing upon the side-track, but not nearer than 779 feet south of the crossing.   The only obstruction of the view to a traveler on the wagon road of the track or a train thereon north of the side-

track, was a box car, without trucks, sitting on the ground at a point 300 feet south of the crossing, and eighteen feet west of the main track.  This box car was used as a tool house, the bottom of such box car being six inches lower than the track and eighteen inches lower than the wagon road at a point thirty feet west of the crossing.  The passenger train was fifteen feet high, and from 240 to 260 feet long.  The deceased's line of vision was six or seven feet above the level of the ground, and at any time the tool house may have been between him and the train, it could not have wholly obstructed his view thereof.  The deceased was 42 years of age, had good eyesight and good hearing, was familiar with the crossing, road and railway, was driving a gentle team, and was riding in an open farm wagon lightly loaded, and accompanying him was an elderly lady, his mother-in-law, who had recently arrived at El Reno, and whom he was taking out to his farm.  The deceased traveled north on the road parallel with defendant's track the distance of 1600 feet before he reached the crossing.  When within 600 feet of the crossing, he had a clear view of any train which may have been on the track at any point within 600 feet south of the crossing.  His view to the south increased as he neared the crossing, so that when he reached the turn in the road forty-nine feet west of the crossing, he could have seen a train at far south as 1788 feet from the crossing.  The surface of the ground at that point was such that he could have stopped or turned around or gone on north and west of the track at a point between the turn in the road and the crossing where the injury occurred.  Thirty feet west of the crossing was about six inches higher than the main track at the tool

house 300 feet away, and was practically on a level with the track down to the crossing. The employes in charge of defendant's train saw the deceased before the collision, when but fifty feet south of the crossing. It does not appear from the findings of the jury that the bell upon the engine was rung continuously from the time the train left the depot until after the accident occurred, the jury finding that the bell was rung at the depot and for a distance therefrom, but not continuously between the depot and the crossing. The jury found that the whistle of the engine was not blown after the train left the depot and before the accident occurred. They also find that the fireman did not see the deceased until after the collision occurred, and that the engineer did all in his power, after discovering the danger of the deceased, to stop his train, but could not do so in time to avoid the injury. If there were any freight cars upon the passing or side-track they could not have been nearer than 779 feet south of the crossing. Assuming that freight cars were located in such position at the time the deceased turned to travel east in the wagon road, forty-nine feet west of the crossing, he could have seen the train 938 feet distant south of the place where the injury occurred, and when he was thirty feet west of the crossing he could have seen such train over 1,000 feet from the crossing, and when twenty-one feet west of the crossing, by looking could have seen the train 2,000 feet south of the crossing. The facts as above set forth having been found by the jury, it then became the duty of the court to determine whether or not such facts were inconsistent with the general verdict as returned in favor of the plaintiff.

We shall not attempt in this decision to review all of

the law which has come to us from the different states of
the Union when dealing with this class of cases Without
exception the courts hold that a person traveling along a.
public highway is bound to exercise reasonable or ordi-
nary care when approaching a railway crossing, and if
he attempts to cross the track either on foot or in a vehi-
cle of any description, he must exercise in so doing what.
the law regards as ordinary care under the circumstances..
He must assume that there is danger, and act with ordi-
nary prudence and circumspection upon that assumption.
And we are not left in doubt as to what the term ordi-
nary care, under the circumstances in these cases, shall
mean.    In attempting to cross a railway track, the trav-
eler must listen for signals, notice signs put up as warn-
ings, and look attentively up and down the track. · This·
rule is not the less applicable because of the failure of
the engineer to sound the whistle or ring the bell.    In the
case of *Railroad Co. v. Huston*, 92 U. S. 697, Mr. Justice·
Field, speaking for the court, said:

"The failure of the engineer to sound the whistle or
ring the bell, if such were the fact, did not relieve the de-
ceased from the necessity of taking ordinary precautions·
for her safety.    Negligence of the company's employes in
these particulars was no excuse for negligence upon her
part.    She was bound to listen and to look before attempt-
ing to cross the railroad track in order to avoid an' ap-
proaching train, and not to walk carelessly into the place·
of possible danger."

The rule thus laid down is a salutary one.    No persons
can recklessly expose themselves to the danger of an in-
jury from a passing train because the employes of such
corporation fail to observe the statutory requirements in
sounding the whistle or ringing the bell when approach-.

ing a crossing. It is true that where the doctrine of comparative negligence prevails, juries are permitted to measure the fault of each party contributing to the injury, and award damages against the party whose contribution to the cause of the injury appears the greater. But this is not the law in this Territory. (*Pittman v. City of El Reno*, 4 Okla. 638.)

Under the facts as established in this case, it appears that the deceased at any time after he reached a point forty-nine feet west of the crossing might have, by casting his eyes to the west, discovered the approach of the train which caused his death; that it was his duty to have done so is too well established by the courts of this country to admit of doubt, and that he was negligent and thoughtless and took no account of the danger which might be encountered by reason of the operation of defendant's train is plainly apparent from the facts of this case.

In *Salter v. R. R. Co.*, 75 N. Y. 273, Miller, J., speaking for the court, said:

"The rule is well established that it is the bounden duty of a traveler approaching a railroad crossing, before he passes over the same, to exercise a proper degree of care and caution, and to make vigilant use of his eyes and ears for the purpose of ascertaining whether a train is approaching; and if by the proper use of his faculties he could have discovered the train and escaped injury, and fails to do so, he is chargeable with contributory negligence, and no recovery can be had."

In *L. S. & M. S. R. R. Co. v. Miller*, 25 Mich. 274, the supreme court of Michigan lays down the law as follows:

" 'The track itself is a warning of danger to those about to go upon it and I think it must be laid down as a principle of law   *   *   *   that persons about to cross a rail-

road track are bound to recognize the danger, and to make use of the sense of hearing as well as of sight, and if either cannot be rendered available, the obligation to use the other is the stronger to ascertain before attempting to cross it whether a train is in dangerous proximity, and if they neglect to do this, but venture blindly upon the track without any effort to ascertain whether a train is approaching, it must be at their own risk. Such conduct is of itself negligence and should be so pronounced by the courts as a matter of law."

Under the facts in this case, the court below was bound to hold that the deceased failed to exercise reasonable care for his own safety, and thereby received an injury which he might have avoided, and under such circumstances the railway company ought not to be subject to an action for damages because of the negligence of the deceased.

The judgment of the lower court is affirmed.

All the Justices concurring.