## CLARK v. ST. L. & S. F. R. Co.

No. 82. Opinion Filed September 14, 1909.

(108 Pac. 361.)

1. **NEGLIGENCE—Question for Jury.** When the evidence is conflicting, or when the facts are undisputed, but different minds might reasonably draw different conclusions from them, the question of negligence is always for the jury.

2. **RAILROADS—Crossing Accidents—Question for Jury—Negligence.** In an action to recover damages for alleged negligence whereby the plaintiff was injured at a railroad crossing, it appeared that the plaintiff at the time of the accident was driving north on a street in a village towards the railroad crossing, in a farm wagon covered with a wagon sheet, the corners of the sheet being tied down at each end. At the point of collision the railroad track runs east and west, the street running north and south. The plaintiff was driving a team of gentle horses, and was traveling about three or four miles an hour. As he approached within about 50 feet of the crossing, he stooped forward, looked up and down the track, and listened for approaching trains, but did not see or hear any; that from the place where he looked and listened he could see the track to the east. the direction from which the train was coming, for a distance of 500 or 600 feet, the view beyond that being obstructed by a section house which stood east of the street on which he was traveling and near the track; that after he looked and listened he sat down on the wagon seat, which was 18 or 20 inches under the wagon sheet and drove on towards the crossing in an ordinary walk, and continued at this pace until his wagon was struck by the train; that he knew the crossing was there, having crossed it several times before; that his hearing and eyesight are fairly good; that before the accident the bell of the engine did not ring, neither did the whistle blow; that he did not see any part of the train or engine, and did not know there was a train approaching until he was struck; that the train was about 2½ hours late and was running at the rate of 30 or 40 miles an hour. and no effort was made to stop it before the collision occurred. **Held,** that the questions of negligence on the part of the defend-

ant, and contributory negligence on the part of the plaintiff were questions of fact for the jury, and it was error for the court below to sustain a demurrer to such evidence.

3. **NEGLIGENCE—Last Clear Chance.** The doctrine of last clear chance is recognized by the courts, as an exception to the general rule that the contributory negligence of the person injured will bar a recovery, without reference to the degree of negligence on his part, and under this exception to the rule the injured person may recover damages for an injury resulting from the negligence of the defendant although the negligence of the injured person exposed him to the danger of the injury sustained, if the injury was more immediately caused by the want of care on the defendant's part, to avoid the injury, after discovering the peril of the injured person.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by James H. Clark against the St. Louis & San Francisco Railroad Company. A demurrer to the evidence was sustained, and plaintiff brings error. Reversed and remanded for a new trial.

*J. L. Hamon* and *Chas. Mitschrich,* for plaintiff in error.
*R. A. Kleinschmidt* and *Flynn & Ames,* for defendant in error.

KANE, C. J. This was an action for damages for personal injuries, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, in the district court of Comanche county, Okla. The petition of plaintiff alleged, in substance, that he was injured at a railroad crossing at the town of Cache, in said county, by a train of defendant striking the wagon in which he was driving, and violently throwing him to the ground. The negligent acts complained of were the failure of the employees of the defendant to ring the bell of its engine, or whistle for the crossing, and the failure of the company to erect a sign board as required by law. The answer of the defendant was a general denial, and a plea that the injury resulted from the contributory negligence of the plaintiff.

The evidence introduced on behalf of the plaintiff tended to

show that at the time of the accident he was driving north on
Fifth street, towards the railroad crossing in a farm wagon cov-
ered with a wagon sheet, the corners of the sheet being tied down
at each end. At the point of the collision the railroad track runs
east and west, the street being nearly level with it. The plaintiff
was driving a team of gentle horses, and was traveling about three
or four miles an hour; that as he arrived within about 50 feet of
the crossing he stooped forward, put his hand on the dash board,
looked up and down the track, and listened for approaching
trains; that from the place where he looked and listened he could
see the track to the east, the direction from which the train was
coming, for a distance of about 500 or 600 feet, the view beyond
that being obstructed by a section house which stood east of the
street on which he was traveling, and near the track; that after
he looked and listened he sat down on the wagon seat and drove
on towards the crossing in an ordinary walk, and continued at
this pace until his wagon was struck by the train; that he knew
the crossing was there, having crossed it several times before;
that his hearing and eyesight are fairly good; before the accident
the bell of the engine did not ring, neither did the whistle blow;
that he did not see any part of the train or engine, and did not
know there was a train approaching until he was struck; that no
effort was made to stop the train by the trainmen before the col-
lision occurred; that the train was about 2½ hours late, and
was running at the rate of 30 or 40 miles an hour; that before
plaintiff drove upon the crossing those within the wagon could not
be seen by those outside on account of the wagon sheet covering
the wagon; that the train consisted of two passenger coaches, bag-
gage and mail car, engine and tender, and ran about the length
of the train before they stopped after striking plaintiff's wagon;
that the trainmen could have seen plaintiff's wagon 500 or 600
feet at a distance of 50 to 75 feet south of the crossing on Fifth
street, and the nearer he approached the track the farther they
could have seen him. After the plaintiff rested his case, the de-
fendant interposed a demurrer to the evidence, which was sus-

tained by the court, and thereupon the court excused the jury and entered judgment in favor of the defendant and against the plaintiff for costs. To review this judgment the case is now in this court by petition in error and case-made.

There are but two questions presented to this court for determination: (1) Was the plaintiff guilty of contributory negligence? and (2) if he was, is he entitled to the benefit of the doctrine of the last clear chance? Both parties agree that the court below sustained the demurrer to the evidence upon the ground that the plaintiff was guilty of contributory negligence, and that the demurrer to the evidence was sustained upon the authority of *Severy v. C., R. I. & P. Ry. Co.,* 6 Okla. 153, 50 Pac. 162; the Supreme Court of Oklahoma territory basing its decision upon the *Houston Case,* 95 U. S. 697, 24 L. Ed. 542, and the *Freeman Case,* 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014. The plaintiff contends that the foregoing cases are not in point, and, further, that if the plaintiff was guilty of contributory negligence the failure of the railway company to attempt to avoid the accident when, by the exercise of proper care, it might have discovered the perilous situation of plaintiff in time to stop the train and avert the calamity was the proximate cause of the injury, and therefore the plaintiff was entitled to recover notwithstanding his negligence. In other words, he insists that he is entitled to the benefit of the doctrine of the last clear chance.

On the first proposition we believe it was error for the court below to sustain the demurrer to the evidence. The case at bar is quite distinguishable from the cases hereinbefore referred to, upon which the judgment of the court below was based. In all of those cases it was admitted that the plaintiff did not look and listen before going upon the track. It is true that in the Severy Case there was no specific finding that the plaintiff did not look and listen, but Mr. Chief Justice Dale, who delivered the opinion of the court, no doubt inferred from the answers of the jury to several interrogatories propounded to it that he did not, and that

the opinion is based upon that theory is obvious from the following language quoted from the opinion of the learned chief justice:

"Under the facts as established in this case, it appears that the deceased at any time after he reached a point 49 feet west of the crossing might have, by casting his eyes to the west, discovered the approach of the train which caused his death; that it was his duty to have done so is too well established by the courts of this country to admit of doubt, and that he was negligent and thoughtless and took no account of the danger which might be encountered by reason of the operation of defendant's train is plainly apparent from the facts of this case."

It is well settled by the authorities that the presence of a railroad track, upon which a train may at any time pass, is notice of danger to such an extent that it is the duty of a person about to cross the track, on a public highway, to exercise caution in so doing and to look both ways for approaching trains, if the surroundings are such as to admit of such precautions. The reason for this rule which requires a traveler to stop, look, and listen, before crossing a railroad track, is, that by such action he may inform himself whether a train is approaching or not, the instinct of self-preservation being sufficient to keep a person from getting in front of such a deadly vehicle, when he knows it is approaching. On this proposition it is useless to multiply authorities; the courts have by almost uniform decision declared that it is negligence *per se* on the part of a traveler injured at a crossing to omit these ordinary precautions to protect himself. But in the case at bar it is admitted that the plaintiff did look and listen when about 50 feet from the track; that from this point he had an unobstructed view of the track to the east for a distance of 500 or 600 feet and saw no train; that beyond that point his view of the track was obstructed by the section house heretofore mentioned. The question then in this case is not whether it is negligence *per se* for the plaintiff not to have looked and listened before attempting to cross, but whether it was negligence *per se* having once looked and listened at a distance of about 50 feet from the track and seeing no train approaching within the dis-

tance of 500 or 600 feet, for which distance the view was unobstructed, not to have continued his vigilance until reaching the track. We are not prepared to so hold. From this statement of facts reasonable men might very well draw different conclusions as to the negligence of plaintiff, and it is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court. *Sans Bois Coal Company v. Janeway,* 23 Okla. 425, 99 Pac. 153. In all lawsuits, and particularly personal injury cases, a slight difference between the exact facts of cases claimed to be analogous makes a wide difference in the application of the law of one case to the facts of another. Every case therefore must depend more or less upon its own circumstances. As was said by Earl, J., in *Kellogg v. N. Y. C. & Hudson R. R. Co.,* 79 N. Y. 72, where counsel was insisting that that case fell within the rule laid down in a previous opinion by the same court in another case:

"It seems to have been supposed at the General Term of the Supreme Court that our decision in the case of *Salter v. Utica & Black River Railroad Co.,* 75 N. Y. 273, controls this case. But without taking time to point out the differences between that case and this, it is sufficient to say that the facts of no two cases are alike. There are many circumstances here which did not exist in that case. We have laid down in many cases the principles which are to govern in the decision of this class of cases. These general principles are to be applied to the cases as they arise, and in their application to this case we are constrained to differ from the learned court below."

The line of authorities cited by counsel for defendant in error to the effect that ordinary care in approaching railroad crossings requires the traveler to look and listen in every direction from which danger may be apprehended, are not in point here. Neither are those to the effect that when the physical facts are such that the plaintiff, if he had looked, must have seen the approaching train, the court will disregard the statement that he did look and failed to see. The plaintiff in this case did look and listen, and

he saw everything that was in sight on the track between the point from whence he looked and where the view of the track was obstructed by the section house. The question squarely presented by the facts then is, Did the plaintiff, notwithstanding the fact that he looked and listened, fail to approach the crossing with the care and caution of an ordinarily prudent man? And this is generally a question for the jury. *Norfolk & Western Railroad Company v. Burge,* 84 Va. 63, 4 S. E. 21.

In *Moberly v. K. C., St. J. & C. B. R. R. Co.,* 98 Mo. 183, 11 S. W. 569, the plaintiff approached the crossing, according to his testimony, after 9:00 p. m. It was rather a cold, moonlight night. He approached from the west side. On that side was a warning signboard, marked "Look out for the Cars." This stood near the Hannibal & St. Joseph Railroad, and was at the base of the incline starting up to the railroad track. The evidence tended to show that this was the most favorable point for a person approaching these crossings to stop and take observations to ascertain whether any train was approaching on either of said roads. In the direction from which defendant's train approached this night, a person standing under the signboard could see it as far as the whistling post or farther, which evidence showed was about 1,000 feet from the crossing. Between that point and the crossing, the railroad made a curve towards the west. The next best point of seeing trains approaching from the south was on the Hannibal & St. Joseph track, and the opportunities for so observing diminished as one went east on account of this curve, and brush, weeds, etc., on the right of way of the tracks. The plaintiff's evidence tended to show that trees, brush, weeds, and vines were so thick that the view was cut off so that one could not see an approaching train from the south on defendant's road for over 250 yards, and perhaps more. He testified that he did stop, just as his wagon stood under the signboard; that he raised his cap from his ears and looked in every direction for approaching trains; that he neither saw nor heard the noise of one; that he took out his watch and saw that it was far past the time when the train on

defendant's road was due at that point, he being familiar with the time of its usually passing; and, satisfying himself that the way was clear and safe, he started immediately across.  Upon this statement of facts, which is taken from the report of the case in 17 Mo. App. 518, Mr. Justice Barclay, who delivered the opinion for the Supreme Court, says:

"There was a sharp conflict on the issue of plaintiff's negligence.  We may summarize the effect of all the evidence in the statement that it was not such as warrants the court in declaring, as matter of law, that plaintiff's negligence contributed to the injury."

This case seems to us to be strongly analogous to the case at bar, and the Supreme Court of Missouri refused to hold the plaintiff guilty of contributory negligence as a matter of law.

In another and later Missouri case, it was held that it is not essential for a traveler to look constantly in both directions. *Gratiot v. Mo. Pac. Ry. Co.*, 116 Mo. 450, 21 S. W. 1094, 16 L. R. A. 189.

Another case in point is *Greany v Long Island R. R. Co.*, 101 N. Y. 419, 5 N. E. 425.  In that case the accident happened at about 5 o'clock in the afternoon, at Richmond Hill, where the defendant had a station, and by which passed two of its tracks running east and west, intersecting a highway running north and south.  The station was at this point and on the south side of the tracks.  The plaintiff lived on the north side of the railroad, and at the time in question was going along the highway to a store situated on the south side of the tracks.  As she came to the tracks to cross the railroad, she saw a train coming from the west on the southerly track; it stopped at the station to let off passengers, and its cars covered the highway.  She stood still, waiting about five minutes for the train to move ahead, but when she reached the track the train was still standing there and she stopped just as it started.  She testified:  "As I came to the track I stood and looked both ways, and along the track, and saw no engine" other than that of the train from the west.  She took a

step or two, and just as she did so, saw a train coming from the east on the north track, but it was so close that she could not make her escape. This occurred in what seemed to her not more than a few seconds after she had looked up and down the track. On cross-examination by the defendant's counsel, she says:

"When I stepped on the first track I looked both ways and could see nothing, but a few seconds after that I was struck." "I could see no engine looking either way."

She was further questioned by defendant's counsel as follows:

"Q. If you had stepped up by the side of that track and looked up the road, you would have seen the train, wouldn't you?"

She says:

"I did look up, and saw it too. It was so close by me that I could not possibly make my escape. If I had looked earlier I would have seen it, but I did not think there was any need of my looking more than once, and I did not think there was any other train due at that time  I had looked a few seconds before and then went right on. When I looked I could see about a quarter of a mile. I did not see any train, and then I walked on toward the track, and the train was right upon me before I noticed it."

Danforth, J., who delivered the opinion of the court, in commenting on this evidence, says:

"Can it be said under these circumstances that she was bound as a matter of law to see the incoming train? Was it not rather for the jury to say whether or not she had made the effort which a prudent person would make in like circumstances? I think it was for the jury, for it cannot be said to be impossible for a reasonable person to conclude that the accident was caused by the negligent running of the defendant's train, and not by the omission of a duty, or reasonable care on the part of the plaintiff to avoid the collision."

In *Rodrian v. N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526, 26 N. E. 741, a case that adheres strictly to the rule requiring a traveler to look and listen, it was held that:

"If in case of an accident at a crossing it appears that the person injured did look for an approaching train, it would not necessarily follow as a rule of law that he was remediless because

he did look at the precise place and time, when and where looking would have been of the most advantage. Many circumstances might be shown which could properly be considered by the jury in determining whether he exercised due and reasonable care in making the observation."

In the case of the *C. & E. I. R. R. Co. v. Hedges,* 105 Ind. 398, 7 N. E. 801, it is held that:

"A person about to cross a railroad track must, to be free from negligence, take such precaution as could reasonably be expected from an ordinarily prudent person under like circumstances; but the fact that he does not, at the instant of stepping upon the track, look to ascertain if a train is approaching, is not conclusive of want of due care on his part."

The foregoing cases sufficiently illustrate the distinction between the case at bar and the cases relied upon by counsel for defendant in error, and it will be observed that in every case where the facts are similar to the admitted facts in the case at bar, the courts have uniformly held that the case should go to the jury upon the question of negligence. When the evidence is conflicting, or when the facts are undisputed, but different minds may reasonably draw different conclusions from them, the question of negligence is always for the jury. Hence, when the question of negligence arises upon a conceded state of facts, if reasonable men might arrive at different conclusions, it must be submitted to the jury.

On the second proposition we are satisfied, as the case now stands, the doctrine of last clear chance or the humanitarian doctrine, as it is called by Mr. White in his work on Personal Injuries on Railroads (section 398), has no application to it. The admitted facts do not bring it within the rule laid down by this court in *A., T. & S. F. Ry. Co. v. Baker,* 21 Okla. 51, 95 Pac. 433. We think the statement of the rule quoted approvingly in *Railway Company v. Baker, supra,* from *Highland Ave. & B. R. Co. v. Sampson,* 91 Ala. 560, 8 South. 778, is the correct one, and are constrained to adhere to it in the case at bar. The rule laid down in the Highland Case is to the effect that:

"If plaintiff, injured in a collision at a railroaod crossing, used due diligence after discovering his peril, he can recover, though he was negligent in not stopping and listening, provided defendant, after seeing the danger failed to use due care."

In the case at bar there was no evidence tending to prove that the engineer in charge of defendant's engine discovered the peril of the plaintiff until the accident occurred. The mere fact that the engineer may have seen the plaintiff approaching the track in a covered wagon, would not necessarily put him on his guard as to the peril of the plaintiff. The engineer has the right to presume that a person thus approaching the track has not omitted the ordinary precautions imposed.upon him by law, and will stop in time to avoid an injury. But when the engineer sees the plaintiff approaching the track apparently unconscious of his danger or unable to extricate himself therefrom, the humanitarian doctrine requires the engineer to exercise reasonable care and prudence to avoid injuring him. In other words, he may not, without incurring civil liability, deliberately run down and kill or seriously injure a person so situated, although it may have been shown that his negligence contributed to the injury. This rule of last clear chance is recognized by the courts, as an exception to the general rule that the contributory negligence of the person injured will bar a recovery, without reference to the degree of negligence on his part, and under this exception to the rule it may now be stated to be well established that the injured person, or his representative, may recover damages for an injury resulting from the negligence of the defendant, although the negligence of the injured person exposed him to the dangers of the injury sustained, if the injury was more immediately caused by the want of care on the defendant's part to avoid the injury after discovering the peril of the injured person.

The judgment of the court below is reversed and the cause remanded, with directions to grant a new trial.

All the Justices concur.