## WEBB v. MISSOURI, O. & G. RY. CO.

No. 6005—Opinion Filed Feb. 4, 1919.

(179 Pac. 17.)

**Trial—Last Clear Chance—Evidence—Instruction.**

In an action for negligence, it is reversible error to refuse requested instruction covering the law applicable to the doctrine of "last clear chance," where the evidence admitted at the trial shows facts to which such doctrine is applicable, even though it is not raised by the pleadings.

(Syllabus by Rummons, C.)

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by W. H. Webb against the Missouri, Oklahoma & Gulf Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

McPherren & Cochran, for plaintiff in error.

E. R. Jones and Arthur Miller, for defendant in error.

Opinion by RUMMONS, C. Plaintiff in error, hereinafter called the plaintiff, commenced this action in the district court of Bryan county against the defendant in error, hereinafter called the defendant, to recover for injuries alleged to have been received in attempting to board a train of the defendant at Kemp City, in Bryan county. The plaintiff alleged and his evidence tended to prove that on April 1, 1911, the defendant maintained no station at Kemp City, but that its passenger trains were accustomed to slow down at that point to permit the postman to put the mail upon the train, and that persons desiring to become passengers upon its train were accustomed to flag the train, and that its passenger trains stopped there and permitted passengers to embark and disembark; that on April 1st the plaintiff, desiring to become a passenger upon defendant's train from Kemp City to Durant, went to the railroad near the crossing of a public highway at Kemp City and flagged an approaching passenger train of the defendant; that the train slowed down, and that plaintiff thereupon caught hold of the handrail at the end of the passenger coach and put his feet upon the bottom step of

the platform of such passenger coach; that the conductor of said defendant operating said train was standing upon said platform in such a position as to prevent the plaintiff from getting up from said lower step upon the platform; that when plaintiff was in this position, said conductor signaled the engineer of the train to go ahead; that said engineer obeyed the signal and started the train with a jerk, which broke the hold of the plaintiff upon the handrail precipitating him down the embankment, inflicting the injuries for which he claims damages. The defendant answered denying the allegations of the petition and pleading contributory negligence on the part of the plaintiff, There was a trial to a jury, resulting in a verdict for the defendant. Plaintiff's motion for a new trial was overruled, and judgment rendered for defendant upon the verdict. Plaintiff brings this proceeding in error to reverse such judgment.

The evidence of the plaintiff himself detailed the occurrence substantially as alleged in the petition. He was corroborated as to the train starting with a jerk by one of the passengers on the train. He was corroborated as to the attempt to board the train and his falling therefrom by practically all of the witnesses. He was corroborated by some of the witnesses as to the custom of the defendant to take on and let off passengers on its trains at Kemp City upon the train being flagged. A. S. Miller, the conductor in charge of the train, testified in substance as follows:

"I was the conductor on M., O. & G. passenger train between Dension and Durant in April, 1911. I was in charge of the train on the morning plaintiff claims to have been injured. We never stopped at Kemp City, and there was no station there. The company did not sell tickets to that place, and did not accept fares to that place. It was my custom to slow down there to pick up and receive and deliver mail. At the time Webb claimed to have been injured I was standing on the rear end of the baggage and express. He made an effort to catch the front-end of the first coach: I wouldn't say exactly whether he caught or not. He ran along even with the train a little ways: just ran along a little ways even with the train, and then he dropped that attitude or position he was in, and as the car came along he grabbed the gate there and ran along with the train I should judge maybe a hundred yards and let loose: maybe he might have run along a hundred yards and let loose. Between the two passenger coaches the gates were fastened. I wouldn't say that the plaintiff ever swung himself off of the ground; he was running along like any man would run along hanging hold of any-

thing that was in motion. I did not push the plaintiff off the train, and did not touch him at all, and did not lean out and shove him off. There wasn't any sudden jerk or jolt after the mail was put on. There couldn't be a sudden jerk to speak of in a train of that kind. I watched the man and saw what happened up until the time he turned loose. He didn't get on the lower step at all. He couldn't get on the lower step with his feet. At all times, as far as I can state, his feet were on the ground."

John Reynolds, the engineer of the defendant, testified in substance:

"I was the engineer on the M., O. & G. on the morning Webb claims to have been injured. We didn't stop at that time for a flag station or anything else. We slowed down enough for the postmaster to throw the mail in the door. On that morning I came up there as usual. I saw Mr. Webb make an effort to get on the train. When we come up there I slowed down so the postmaster could throw the mail in the door, and this party was standing by the side of the track and caught the front end of the Jim Crow car, first coach behind the baggage car, run along a little ways, and saw he couldn't get on there, and turned loose, and got between the smoking car and chair car, and ran along there for a ways, and by that time I had gained speed, and he saw he couldn't get on, and turned loose and slid down the dump in a sitting position. Mr. Miller was standing on the rear end of the baggage car; I got the signal from him after the mail was thrown on. The conductor signaled me to move forward. I saw some one signal me to stop before I came up there; supposed it was Mr. Webb. I saw this man as he tried to get on the train. He turned loose with one hand and turned around with his back to the train. He didn't hang on by one hand while the conductor was signaling me, and he wasn't jerked loose."

The only assignments of error necessary to consider complains of the giving and refusal of instructions by the court. The court gave the following instructions:

"No. 1. If you believe from the evidence in this case that the passenger train testified about slowed down at the town of Kemp City, and that the plaintiff took hold of the rods and pulled up, and thereby got upon the first step, and that the conductor saw him there and prevented him from getting on the car any further, and thereupon signaled the engineer to increase the speed, and the speed of the train was then increased suddenly, and the plaintiff was thereby thrown from the step where he was standing, and that no negligent act of his after he had gained the first step contributed to the fall,

then the defendant would be liable for any injury that resulted from such fall.

"No. 2. On the other hand, if you believe that the train had not slowed up to take on passengers, and was running at a dangerous rate of speed, and the plaintiff, knowing that fact, attempted to board the said running train, and he was thrown to the ground and injured, the defendant would not be liable therefor.

"No. 3. If you believe that state of facts existed as set out in instruction No. 1, then the acts of the plaintiff which occurred prior to his having gained the first step would be immaterial, and you should find in his favor, although he may have been negligent in the beginning in attempting to board the said train. Unless, however, you believe from the evidence the state of facts existed as set out in said first instruction, the plaintiff in this case cannot recover, and the burden is upon him to prove by a fair preponderance of the evidence the things set out in said instruction.

"No. 4. Should you believe from the evidence that the cause of the fall was the fact that the plaintiff failed to catch a handhold in attempting to board a running passenger train at a rate of speed dangerous for him to attempt to get on, the defendant would not be liable for the injuries resulting from the fall."

The plaintiff requested the following instructions:

"You are further instructed that if you find by a fair preponderance of the evidence that the defendant company followed the course of permitting passengers to and from Kemp City, Okla., to board its train at said place, either while moving slowly or stopping the same, had collected fares from such passengers that the plaintiff knew this at the time he went to the railroad at Kemp City, that the plaintiff signaled the engineer upon the train at the said time, that the engineer saw the signal and the train slowed up and the plaintiff, with the intent of becoming a passenger upon the said train, caught hold of the handholds on one of the coaches and was in the act of boarding said train, that the conductor and engineer saw the position and understood the purpose of the plaintiff, and at that time the conductor signaled the engineer to move forward with increased speed, that the engineer obeyed the signal and jerked the train forward, and thereby violently threw the plaintiff loose from the train and down the embankment, and in that manner inflicted injuries complained of by the defendant, that in that event you should find in favor of the plaintiff. * * *

"You are further instructed that if you find by a fair preponderance of the evidence that the defendant company had followed the course of permitting persons to become pas-

sengers from Kemp City, Okla., to board its passengers trains at Kemp City, while the same were moving slowly through the said town, collecting fares from such passengers so boarding said train, and that the plaintiff knew of the said practice, and the plaintiff went to the place on the defendant's railroad where persons had been in the habit of boarding the said train, and there signaled the passenger train in the usual manner, and the signal was seen by the engineer of the said train, and thereupon the train slowed down and the plaintiff caught the handholds of one of the coaches composing the said passenger train, and was in the act of boarding the same, and the conductor and engineer saw and knew his position and understood his purpose, then in that event it was the duty of the said servants of the defendant company to maintain the said slow rate of speed until the plaintiff had a reasonable opportunity to safely board the train, and it was the duty of the said servants to refrain from suddenly increasing the speed of the said train while the plaintiff was in the act of boarding the same; if you find by a fair preponderance of the evidence the above facts to be true, and that by reason of the acts of the said conductor and engineer in increasing the said rate of speed the plaintiff was thrown violently to the ground and injured as alleged by the plaintiff, you should find for the plaintiff.

The instructions 2 and 4 given by the court and complained of by the plaintiff we think are not subject to objection on behalf of the plaintiff, for the reason that in the first instruction given the court submits the theory of the case testified to by the plaintiff and alleged in his petition and directed the jury to find for the plaintiff if they found the facts to be as alleged by him, and we do not think the second and fourth instructions complained of by the plaintiff constitute error, since these instructions present to the jury the theory of the defendant, and are not incorrect statements of the law; so we conclude that there is no merit in the assignment of error taken by plaintiff to the giving of these instructions.

The third instruction given and the instructions requested by the plaintiff and refused by the court, however, present more difficulty. While the evidence of plaintiff tends to show that he had gotten upon the bottom step of the platform of the car, but was prevented from further entering the car by the conductor, who stood in his way, that the train started with a jerk, breaking his hold and throwing him to the ground, the evidence of the witnesses for the defendant tends to show that the plaintiff in attempting to board the train never got upon the step of the platform of the coach, but that

he had taken hold of the handrail on one of the coaches, and was running along beside the moving train attempting to get on. The evidence of all the witnesses shows that the train never came to a stop, but only slowed down. The evidence of the conductor and engineer shows that they clearly saw the plaintiff attempting to board the train, holding onto the handrail, and running along beside the rain; that despite their knowledge of this fact the conductor signaled the engineer to go ahead, and the engineer increased the speed of the train until the hold of plaintiff upon the handrail was broken, and he fell down the embankment and was injured. The engineer saw the plaintiff signal the train to stop. Both the conductor and the engineer saw the position in which the plaintiff was, and knew he was seeking to board the train.

Under these circumstances it was the duty of the defendant's servants observing the plaintiff in a position of peril to do nothing to increase his hazard; but, on the other hand, it was their duty to exercise reasonable care to diminish the hazard and to avoid injury. This is the doctrine of the last clear chance. Atchison, T. & S. F. Ry. Co. v. Baker. 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; Clark v. St. Louis & S. F. Ry. Co., 24 Okla. 764, 108 Pac. 361; Chicago, R. I. & P. Ry. Co. v. Martin, 42 Okla. 353, 141 Pac. 276; Missouri, O. & G. Ry. Co. v. Parker, 50 Okla. 491, 151 Pac. 325.

Under these authorities it was the duty of the defendant's employes to do nothing to increase the hazard of the plaintiff, but, if possible by the exercise of reasonable care, to save him from injury despite any negligence of which the plaintiff might have been guilty in placing himself in that position. The instructions requested by the plaintiff and refused by the court fairly call the court's attention to the law applicable to the state of facts in evidence.

If the jury believed the testimony of the plaintiff. instruction No. 1 given by the court fairly covered the case: but the plaintiff was entitled to have the jury instructed as to the law applicable to the evidence given in conflict with and contradiction of his testimony. Nor did the instructions given by the court in any way cure the error complained of by plaintiff, since under the instructions given by the court, the jury could only find for the plaintiff in case they found that the plaintiff took hold of the rods and got up on the first step, and that the conductor saw him and prevented him from getting on the car any further, and thereupon signaled the engineer to go ahead, and the en-

gineer increased the speed of the train suddenly, and that the plaintiff was thereby thrown from the step upon which he was standing. Under the third instruction all of these. elements must have concurred before the jury could find the defendant liable, and the liability of the defendant for negligently injuring plaintiff after discovering his peril was by this instruction excluded from the consideration of the jury, and the instruction was therefore erroneous. Nowhere did the court instruct upon the doctrine of last clear chance, upon which the evidence in the case required an instruction. The instructions requested by the plaintiff and refused correctly stated the law, and they were applicable to the facts in the evidence. It was reversible error for the trial court to refuse these instructions.

The judgment of the trial court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.