**HARRIS et al. v. V. S. COOK LBR. CO.**

No. 19606. Opinion Filed Sept. 15, 1931.

Rehearing Denied Oct. 13, 1931.

John Halley, Ames, Cochran, Ames & Monnet, Everest, Dudley & Brewer, and C. E. Hall, for plaintiffs in error.

Rainey, Flynn, Green & Anderson, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the judgment of the district court of Oklahoma county, Honorable Sam Hooker, judge. This case was started by V. S. Cook Lumber Company, a corporation, filing in that court on June 27, 1924, a suit to foreclose a second mortgage executed by E. Highfill to it on December 18, 1923, to secure a promissory note for $4,750 due June 18, 1924, signed by E. Highfill, and covering lots 29 and 30 of block 9, Gault's addition to Oklahoma City. The mortgage was subject to a mortgage for $15,000 to Local Building & Loan Association. The defendants in the suit were V. V. Harris and E. Highfill. There were two counts in the petition. The first count detailed the execution of the note and mortgage by Highfill, and detailed the connection of defendant Harris, as found on page 8 of the case-made, as follows:

"That on February 6, 1924, the defendant, E. Highfill, executed, acknowledged and delivered to the defendant V. V. Harris a warranty deed conveying said mortgaged premises to the said Harris, the said warranty deed containing a recital of the said mortgage to this plaintiff and a recital of a first mortgage, superior in lien, to Local Building & Loan Association, which said mortgage last mentioned is more fully described in the second and third counts of this petition. That the transaction between the said E. Highfill and the said property by the said Highfill to the said Harris was verbal, and that, by such transaction, the said Highfill permitted the said Harris to deduct, and, in fact, the said Harris did deduct, from the purchase price all of the indebtedness and obligations secured by the said mortgage, and thereby the said defendant Harris assumed and made his own the obligations of the defendant Highfill to this plaintiff."

The conclusion of this count is a statement that plaintiff was entitled to a personal judgment on the note against Harris. The second count adopted the allegations of the first count, recounted the execution by Highfill to plaintiff of the note and mortgage, its recordation on January 4, 1924, and the execution by a former owner, Mary J. Husselman and her husband, W. E. Husselman, of a mortgage to Local Building & Loan Association on the property to secure $15,000, and set out the note and mortgage. It called attention to the failure by the owner to pay taxes and installment of interest and on stock called for in the note, and that failure would render the mortgage subject to foreclosure. It further alleged a conveyance by the Husselmans to Highfill on June 13, 1923, conveying the property, subject to the $15,000 mortgage. The allegation as to the assumption by Harris of the debt is found on page 13, and is as follows:

"That, on June 13, 1923, the said Mary J. Husselman and W. E. Husselman executed, acknowledged, and delivered unto E. Highfill a warranty deed conveying all of the said real estate to the defendant Highfill, and that by agreement, as a part of the same transaction, the said mortgage and indebtedness to Local Building & Loan Association was deducted from the purchase price of said property and thereby the defendant Highfill assumed and accepted as his own the indebtedness evidenced by said note; that this plaintiff does not know and cannot allege whether such agreement was verbal or written; and in like manner as heretofore alleged, upon the conveyance of said property by the said Highfill to the defendant Harris, he, the said defendant Harris, by verbal agreement deducted the said obligations from the purchase price and assumed and accepted the same as his own.

"That despite the covenants and obligations evidenced and expressed by the said note and the said mortgage to Local Building & Loan Association, the defendants herein failed and refused to pay such obligations as they matured, and failed and refused to pay the taxes upon the said real estate, with such effect that, upon the 27th day of June, 1924, there was due and wholly unpaid upon the said obligation so held by Local Building & Loan Association the sum of $1,059.05, and there were due and unpaid for more than 40 days after the same became due and payable, taxes in the sum of $404.84, and that on said 27th day of June, 1924, this plaintiff, holding, as heretofore alleged, a mortgage inferior in lien to the mortgage of said Local Building & Loan Association, and its rights as such second mortgage being threatened by the said defaults upon the part of the defendants herein, paid the said sum so in arrears to Local Building & Loan Association and paid the said taxes so in arrears, a total payment of $1,463.89. And that by reason thereof the defendants herein are indebted unto this plaintiff in the said sum, together with interest thereon accruing at ten per cent. per annum from June 27, 1924, the date upon which such payments were made, and upon which this suit is filed, for which said sum this plaintiff is entitled

to judgment against the said defendants and each of them."

The third count called attention to the covenant of Highfill to pay taxes, and the failure of the defendants to pay them, and also to pay installments due under the first mortgage. There was a prayer for relief on the first cause and for personal judgment against defendants on the note for $5,444.46 and interest, and on the second cause for $1,463.89 and interest, and on the third, that unless defendants paid within six months, the property be sold, subject to the loan company's mortgage.

Harris appeared and filed a motion to quash, followed by a demurrer. Young Pepper got leave to intervene, and did so by showing that he held the loan company's mortgage by purchase made June 30, 1924, and sought foreclosure. Plaintiff demurred to the answer and cross-petition, and demurrer was overruled. The Harris demurrer was also overruled, and he filed an answer February 14, 1925. He admitted that plaintiff's mortgage was subject to foreclosure. He admitted the conveyance to himself, but denied personal liability, and denied express assumption and the deduction from the purchase price of the mortgage indebtedness. He denied the payment to the loan company of anything for taxes or on the note. Plaintiff replied to the cross-petition of Young Pepper. It withdrew its admission of priority pleaded in the former pleadings, and pleaded that the mortgage had been bought by Harris, the owner of the property, for the purpose of cheating the plaintiff, and deduced from the conduct of Harris that the ownership of the property and of the first mortgage had become united in Harris, and therefore the first mortgage was discharged, thereby making plaintiff's mortgage superior. It set up, also, that the plaintiff was entitled to carry out the conditions of the loan company's mortgage by payment of $208.50 a month until the stock matured, and getting the benefit of the stock maturity, and that when the stock was canceled the note and mortgage were canceled. The prayer on this answer varied from its original prayer as found on page 65, as follows:

"Plaintiff further shows to the court that since the filing of this action, it has learned that said sum of $1,059.05 tendered by it to said Local Building & Loan Association on June 27, 1924, to be applied upon said note and mortgage held by said Building & Loan Association was not so applied, and, therefore, this plaintiff is not entitled to a judgment against the defendant Harris and the defendant E. Highfill for said sum. .

"Wherefore, plaintiff prays that it have

judgment against the defendants E. Highfill and V. V. Harris, in the total sum of $5,848.30, together with interest thereon at the rate of ten per cent. per annum from June 27, 1924, until paid, together with the costs of this action, and that it have a further judgment against all of the parties to this action, including the intervener, Young Pepper, decreeing and establishing plaintiff's mortgage asserted in its petition to be a valid and subsisting lien as security for all of said sums, and that the same be decreed to be a prior and superior lien to any rights, liens or claims of any other party to this action, and that said mortgage be ordered foreclosed, as provided by law, and that the plaintiff have such other and further relief as the court may deem right and proper."

A reply to Harris' answer was made withdrawing its statements as to the priority of the loan company mortgage, its prayer being as follows:

"Wherefore, plaintiff prays that it have judgment against the defendant V. V. Harris for the sum of $5,848.30, together with interest thereon at the rate of 10 per cent. per annum, from June 27, 1924, until paid, together with the costs of this action, and that it have a further judgment decreeing and plaintiff's mortgage asserted in its petition to be a valid and subsisting lien as security for all of said sums, and that the same be decreed to be a prior and superior lien to any rights, liens, claims, title or equities of the defendant herein, and that said mortgage be foreclosed as provided by law, and that the plaintiff have such other and further relief as the court may deem right and proper."

A motion was made and sustained to require plaintiff to separately set out and state the answer of plaintiff to cross-petition of Young Pepper, and the reply of plaintiff to answer of V. V. Harris. There was filed on March 24, 1925, an answer and reply of plaintiff to cross-petition and answer of Young Pepper, the intervener, but the issues were not changed, and Young Pepper made a reply to the answer of plaintiff. No new reply appears to have been made to the answer of defendant Harris. In reply of the intervener, he expressed a willingness for the court to give credit for whatever might be due at the time of trial, if the Building & Loan Association had continued to own the note up to the time of the trial. This was filed April 21, 1925.

With issues thus made, on October 16, 1925, a jury was empaneled to try the case. Attorneys for intervener and defendant objected to submission of case to a jury, and objection was overruled and exceptions. Evidence was introduced by plaintiff consisting of the secretary of the Building & Loan

Association and the note and mortgage of Mary Husselman and her husband, and the assignment to Young Pepper without recourse. The last payment was made January 15, 1924, and dues for February, March, April, May, and June were $450, interest $592.50, fines $16.50, aggregating $1,059.05, and a good deal of testimony was offered as to the advance by the second mortgagee, and its return. A receipt for taxes paid by plaintiff on the property on July 1, 1924, for $403.84 was introduced at page 124. E. Highfill was called as a witness, and the deed from Mary Husselman to him introduced at page 126, the habendum clause being as follows:

"To have and to hold said described premises unto the said part—of the second part —heirs and assigns forever free, clear and discharged of and from all former grants, charges, taxes, and judgments, mortgages, and other liens and encumbrances of whatever nature, except one mortgage in the amount of $15,000 to Local Building & Loan Ass'n which second party assumes and agrees to pay."

The deed from Highfill to Harris was introduced, as follows:

"Warranty Deed.

"Know All Men by These Presents:

"That E. Highfill, a widower, of Oklahoma county, state of Oklahoma, party of the first part, in consideration of the sum of one dollar and exchange of other property— Dollars, in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, and convey unto Vernon V. Harris of Cleveland county, state of Oklahoma, party of the second part, the following described real property and premises, situate in Oklahoma county, state of Oklahoma, to wit:

"All of lots twenty-nine (29) and thirty (30) in block nine (9) in Gault's Addition to Oklahoma City, Okla., as the same are shown on the recorded plat thereof.

—"together with all the improvements thereon and appurtenances thereto belonging, and warrant the title to the same.

"To have and to hold said described premises unto the said party of the second part, his heirs, and assigns forever, free, clear and discharged of and from all former grants. charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature.

"Except a first mortgage to Local Building & Loan Association with an unpaid balance of $14,386.34, and a second mortgage to V. S. Cook Lumber Company, of $4,750, dated December 18, 1923.

"Signed and delivered this 6th day of February, 1924.

"E. Highfill."

At page 130, the following took place:

"Q. Mr. Highfill, what was the consideration in your transfer of this property to Mr. Harris? Mr. Hall: To which we object, for the reason that it is incompetent, irrelevant, and immaterial, and an attempt to—A. Right around $32,000. The Court: Wait a minute, until he makes his objection. Mr. Hall:— an attempt to vary the terms of a written instrument. The Court: Overruled, with exceptions to the defendant. Q. Now, then, you may answer. A. $32,000. Q. What kind of trade did you make with Mr. Harris on this property? Mr. Hall: That is objected to for the reason that it is incompetent, irrelevant, and immaterial, and an attempt to vary the terms of a written instrument. The Court: Overruled, with exceptions. Q. Go ahead, now. A. Yes, we had that kind of trade. Q. All right; tell the jury what your trade was. A. Mr. Harris—Mr. Hall: Wait just a minute. I would like for each of these objections which have been made to show for both the defendant and the intervener. The Court: All right. Mr. Hall: And now we object to the question just propounded for the reason that the same is incompetent, irrelevant, and immaterial, and an attempt to vary the terms of a written instrument, by parole and contemporaneous testimony.

"The Court: Overruled, with exceptions. Q. Go ahead, please. A. Mr. Harris made a proposition through Mr. Micheals, a real estate man here, that he would give me— that he would assume my indebtedness on this piece of property. Q. Is that the property involved in this case? A. Yes, sir. Q. All right. A. And that he would also give me $10,000 of Big Elk Mining Company stock and $1,000 of the Brown Cafe, which at that time was located on Broadway right across the street from the Skirvin Hotel, and a pair of lots out in Packingtown addition. That was the consideration. Q. And upon that date was your deal closed with him? A. Yes, sir. Mr. Hall: Just a minute. We object to that for the reason that it is incompetent, irrelevant, and immaterial, and an attempt on the part of the plaintiff to vary the terms of a written instrument by parole and contemporaneous evidence. The Court: Overruled. Mr. Hall: Exception. Q. In making your trade with Mr. Harris, was the amount of indebtedness on the Local Building & Loan Association mortgage calculated? A. Yes, sir. Mr. Hall: Objected to for the reason that it is incompetent, irrelevant, and immaterial, leading and suggestive, and an attempt upon the part of the plaintiff to vary the terms of a written instrument by parole and contemporaneous evidence. The Court: Overruled. Mr. Hall: Exception. Q. Was the then indebtedness upon this property to the Cook Lumber Company also calculated at that time by you and Mr. Harris? Mr. Hall: To which the defendant and intervener object as leading and suggestive, and

for the further reason that it is incompetent, irrelevant, and immaterial and an attempt upon the part of the plaintiff to vary the terms of a written deed by parole and contemporaneous evidence. The Court: I overruled the other objections because I thought this witness was hard of hearing. I don't think it is right to lead him always. Just let him tell it without leading him. I will sustain the objection to the question, as being leading. Mr. Anderson: All right, your honor, probably so. I thnk it has been covered sufficiently, any way, and you may take the witness. Mr. Hall: Comes now the defendant and also the intervener and moves the court to strike from the evidence all of the testimony of this witness in answer to questions with reference to the agreement between himself and the defendant Harris in connection with the transfer of the property involved in this case, with reference to the consideration therefor, and with reference to the assumption or nonassumption by the defendant Harris of any indebtedness, and to instruct the jury not to consider the same for the reason that the same is incompetent, irrelevant and immaterial and an attempt upon the part of the plaintiff to vary, by parole and contemporaneous testimony, the 'terms of a written deed. The Court: Overruled, with exceptions."

A bill of sale for furniture was introduced as found on page 142. It transferred the furniture subject to $1,000 mortgage, and recites a consideration of $1. Highfill claimed the property transferred by him was valued at $32,000, and the property taken in exchange was valued at $10,000 for the mining stock, and the lots in Packingtown at $1,000. Some correspondence between Harris and plaintiff was introduced, and defendant as a witness on behalf of plaintiff to establish some correspondence between him and plaintiff's attorney, and also that he paid the mortgage on the furniture to Cook & Company.

The deposition of Young Pepper was read covering his relations with Harris. Plaintiff rested. Intervener demurred, and asked the court to render judgment, holding his mortgage first. Court overruled this, followed by exceptions. Harris did the same and asked for dismissal of suit seeking personal judgment against him, which was overruled and exception taken. Defendant Harris and intervener introduced proof on their behalf. Harris and Michael, the man who negotiated the trade, testified positively that Harris refused to assume the mortgage indebtedness, and, according to Michael, it was discussed at the time the deed was delivered, and left out of the deed. A good deal of testimony was introduced showing the relation between Young Pepper and Harris, and it showed that they were part-

ners, and the mortgage was assigned to Pepper, and he was trustee for the partnership, and the purchase price came from partnership funds.

The real estate agent with whom the property was listed for sale testified on page 272 that it was listed at $30,000, and Harris never priced the property listed with him. At page 275 he testifies as follows:

"Q. But nothing of the kind was said to Mr. Harris? A. No, sir. Q. And Mr. Harris, knew nothing about what it was listed to you at and never figured the listing price nor the entire price of the property; is that correct? Mr. Anderson: Object to that as leading and suggestive. A. No, sir. Q. He did not? A. No, sir. Mr. Hall: That is all."

Some proof was made as to the value of the property actually turned in on the trade, showing that it had no fixed value. No proof was offered in rebuttal of the circumstances detailed concerning the refusal of Harris to assume the indebtedness, and the deed's delivery, omitting an assumption clause. By agreement, four interrogatories were submitted to the jury, and the record shows the court directed an exception by each party to submitting each interrogatory. At page 295 is the following:

"Whereupon, at the conclusion of arguments of counsel, the jury retired, in charge of their lawful sworn bailiff, to consider of their answers to the interrogatories by the court submitted as aforesaid, whereupon, in the absence of the jury, and after discussion of court and counsel. The Court: All evidence excluded by the court with reference to the payments to the Building & Loan Association, will be admitted before the court, and give the defendants and each of them an exception."

The interrogatories and answers were as follows:

Interrogatory No. 1. "At the time Harris and Highfill exchanged properties, —that is, at the time Highfill deeded the property involved in this cause to Harris, —did V. V. Harris assume and agree to pay the indebtedness due the Local Building & Loan Association and the V. S. Cook Lumber Company? Answer: No."

Interrogatory No. 2. "At the time referred to, was there an agreement between V. V. Harris and E. Highfill that the said V. V. Harris should not assume and become personally liable for the mortgages to the local Building & Loan Association and the V. S. Cook Lumber Company? Answer: No."

Interrogatory No. 3. "At the time said property was traded by Highfill to Harris, was the same traded subject to the mortgages, and were the amounts of said mort-

gages deducted from the consideration for said property? Answer: Yes."

Interrogatory No. 4. "To whom was the note and mortgage held by the Local Building & Loan Association transferred,—that is, whether to Young Pepper for use and benefit of V. V. Harris, or to Young Pepper for the use and benefit of the partnership or business arrangement existing between Harris and Young Pepper? Answer: Transferred to Young Pepper for the use and benefit of V. V. Harris."

These interrogatories were returned and filed October 17, 1925. The next step was on June 5, 1926. The matter came on for hearing on motion for judgment on the findings of the jury. At that time request was made to introduce the written proposal of Highfill to sell the property, which had been found. Testimony was offered showing due diligence in the search before the trial for this written instrument and its having been found afterwards. The proposition was as follows:

"Royal Insurance Company, Limited (of Liverpool)
"Southern Department
"Atlanta, Ga.
"Gardner, Clarke & Company,
"R. H. Gardner, E. W. Clarke, Residing Agents.
"312-16 American National Bank Bldg., Oklahoma City, Okla.
                           "February 2nd, 1924.
"Mr. V. V. Harris,
    "Norman, Oklahoma.
"Dear Sir:
"I beg to submit the following proposition on the 8th St. property belonging to me:
"I will accept for my equity 2705 and 2708 North Walker, subject to a mortgage to Oklahoma City B. & L. of $7,200, the $1,000 stock in Brown's Cafe, the Packingtown lot, and $5,000 worth of the Big Elk mining stock, subject to marketable titles, etc.
"I will accept title to the property on North Walker, and await your judgment of the court before making any record of the transaction.
                           "Yours truly,
                           "E. Highfill."

Offer of proof was made to explain that the $7,200 mortgage was on property belonging to Harris, but practically refused by the court. Harris and Pepper insisted that the answers of the jury were subject to the approval of the court. At this time the case was submitted to the court. On July 30, 1926, a petition for new trial was filed by Harris and Pepper. It set up the finding of the written proposal, and efforts to

find it before the trial, and also the discovery, since the trial, that the witness W. T. Elsie knew of the declaration of Highfill that the defendant Harris would not assume the payment of the mortgage on the property sold him, and accordingly the written proposition to sell the equity was made.

Summons was issued and served on plaintiff, followed by motion to quash on account of service on the wrong officers, and on account of defects in the service. Thus matters stood until March 8, 1927, at which time the court advised the parties as follows:

"Thirteenth Judicial District, State of
"Oklahoma.  Oklahoma and Canadian
    "Counties.
          "Oklahoma City, Okla.
            "March 8, 1927.
"Sam Hooker, Judge.
"Suits & Hall,
"Rainey, Flynn, Green & Anderson,
"V. V. Harris, Lawyers,
          "Oklahoma City.
"H. W. Morgan. Lawyer.
          "Anadarko, Okla.
"Gentlemen:
"In case of V. S. Cook Lumber Company v. Harris et al., No. 43200, which case was tried on October 17, 1925, and subsequently argued in April, 1926, and which has been submitted to the court a length of time of which the court is ashamed, I beg to advise each of you that I have read and reread the briefs and authorities therein cited, and have reached the conclusion hereinafter stated.

"This case was submitted to the jury upon interrogatories, which interrogatories, in the judgment of the court, have the same force and effect as a verdict of the jury, and the same procedure applicable to a verdict of the jury must be followed and complied with in a law case where interrogatories are submitted, which in this case was not done. In passing, I am of the opinion that the answers to the interrogatories propounded to the jury, in so far as questions numbered 2 and 3 are concerned, are incorrect, contrary to the evidence, and the jury, in my judgment, were not justified under that evidence in answering the interrogatories as they did, and the answers to those interrogatories are disapproved, and if the court had the power, would be set aside, for the reasons stated above. The court is of the opinion that a motion for new trial should have been filed in this case within three days after the jury returned these answers into court, but the same was not done and the court is powerless, upon a motion for a new trial subsequently filed, to disturb these answers in any way whatsoever. The court is further of the opinion that, under the record as it stands, the plain-

tiff is entitled to a judgment upon the interrogatories propounded to and answered by the jury.

"However, I see in the record a petition for a new trial, but the issues are not made up thereon and the court is not passing upon any relief asked for in said petition. It appears that the summons issued was not in conformity to law and a motion is now pending to quash the same, which has not been passed upon, and, in so far as the issues involved in said petition for a new trial, the same are not considered here.

"Exception will be allowed the defendant, notice of appeal given in open court, etc., all of which can be incorporated in the journal entry.

"Yours truly,
"(Signed) Sam Hooker, Judge."
"SH-rbc

On March 12, 1927, Harris made a motion for judgment, claiming that the answers to the interrogatories were merely advisory. On March 16, 1927, the motion to quash the service was sustained and alias summons ordered. New summons was issued and served on December 10, 1927. Judgment was rendered for plaintiff and exceptions taken by Harris and Pepper. The court ordered the letter set out above to be incorporated in the journal entry. At the same time the petition for new trial was taken up and evidence offered as to discovering the whereabouts of the Highfill proposal, and its being found in March, 1926. Harris testified as to search before. D. W. Boyte testified as to finding the paper March 11, 1926, accidentally in another file from the one it would naturally be found in, a dead file. He also testified to search before the trial. W. T. Elsie also testified as to conversation with Highfill, when Highfill stated to him that Harris would not assume the mortgage. That pursuant to that, the proposition in writing was submitted, copied above. That he represented Highfill in a great many trades. Plaintiff declined to submit any additional evidence, saying that it was submitted on the original evidence. The matter was taken under advisement. Journal entry, found on page 372, is as follows:

"Journal Entry.

"This cause coming on to be heard this the 10th day of December, 1927, the same being a regular court day of the September, 1927, term of the district court of Oklahoma county, before the Honorable Sam Hooker, judge of said court, upon the motion of the defendant V. V. Harris and the intervener, Young Pepper, requesting the court to enter judgment in this cause in favor of the defendant V. V. Harris and the intervener, Young Pepper, said motion having been filed in this cause on the 12th day of March, 1927, and the court having heard the argument of counsel and being fully advised in the premises, is of the opinion that the court has no discretion in the matter, but is compelled, under the statutes of Oklahoma, to enter judgment in favor of the plaintiff, V. S. Cook Lumber Company, a corporation, and against the defendants, under the special findings of fact of the jury at the trial of this cause, had on October 16, 1925. In regard to this, the court makes the following statement:

"'This case was submitted to the jury upon interrogatories, which interrogatories, in the judgment of the court, have the same force and effect as a verdict of the jury, and the same procedure applicable to a verdict of the jury must be followed and complied with in a law case where interrogatories are submitted, which in this case was not done. In passing, I am of the opinion that the answers to the interrogatories propounded to the jury, in so far as questions numbered 2 and 3 are concerned, are incorrect, contrary to the evidence, and the jury, in my judgment, were not justified under the evidence in answering the interrogatories as they did and the answers to these interrogatories are disapproved, and if the court had the power would be set aside for the reasons stated above. The court is of the opinion that a motion for new trial should have been filed in this case within three days after the jury returned these answers into court, but the same was not done and the court is now powerless to disturb these answers in any way whatsoever. The court is further of the opinion that under the record, as it stands, the plaintiff is entitled to a judgment upon the interrogatories propounded to and answered by the jury.

"'However, I see in the record a petition for a new trial, and the court is not passing on any relief asked for in said petition.'

"And thereupon, the plaintiff, V. S. Cook Lumber Company, a corporation, moved the court to enter judgment in favor of the plaintiff and against the defendants E. Highfill and V. V. Harris, and each of them, and the court finding that, on the 16th day of October, 1925, this case came on regularly for trial, the plaintiff appearing by its attorneys, Cottingham, McInnis & Green, and Frank G. Anderson; the defendant V. V. Harris and the intervener, Young Pepper, appearing by their attorneys, Suits & Hall, and the defendant E. Highfill, and Mary J. Husselman and W. E. Husselman, not appearing, and it further appearing to the court that said defendants who did not appear had been duly and legally served with summons in the manner provided by law and the time allowed for them to appear, demur, answer, or plead herein having long since expired, the said defendants E. Highfill, Mary J. Husselman, and W. E. Husselman, were each three times called in

open court to appear and answer to the petition of the plaintiff herein, but came not, and wholly made default, and the court having adjudged the said defendants to be in default for want of answer;

"Thereupon, each of the parties appearing having announced ready for trial, a jury of twelve good lawful men were duly selected, impaneled and sworn to try the issues in the above-entitled cause, and after having heard a portion of the evidence and the hour of adjournment having arrived, the court was duly and legally adjourned to October 17, 1925, and thereafter, and on said October 17, 1925, the parties being present and represented as at the beginning of the trial, the cause was resumed, and the taking of evidence upon behalf of all parties was completed.

"Thereupon, it was agreed between the parties, the said cause should be submitted to the jury upon written interrogatories, and after the cause was argued to the jury, the jury retired to consider said interrogatories, and thereafter did return the same into court with their answers thereto, which interrogatories and answers are in the following words and figures, constituting all the interrogatories submitted to the jury, and are as follows, to wit:

" '1. At the time Harris and Highfill exchanged properties,—that is, at the time Highfill deeded the property involved in this cause to Harris,—did V. V. Harris assume and agree to pay the indebtedness due the Local Building & Loan Association and the V. S. Cook Lumber Company? Answer yes or no. Answer: No.

" '2. At the time referred to, was there an agreement between V. V. Harris and E. Highfill that the said V. V. Harris should not assume and become personally liable for the mortgages to the Local Building & Loan Association and the V. S. Cook Lumber Company? Answer: No.

" '3. At the time said property was traded by Highfill to Harris, was the same traded subject to the mortgages, and were the amounts of said mortgages deducted from the consideration for said property? Answer: Yes.

" '4. To whom was the note and mortgage held by the Local Building & Loan Association transferred—that is, whether to Young Pepper for use and benefit of V. V. Harris, or to Young Pepper for the use and benefit of the partnership or business arrangement existing between Harris and Young Pepper? Answer: Transferred to Young Pepper for the use and benefit of V. V. Harris,

—"which interrogatories were then received in open court on said October 17, 1925, and duly filed. Said cause was thereafter postponed from time to time, and has been orally argued by counsel for plaintiff and defendant V. V. Harris, and the intervener, Young Pepper, and written briefs have been submitted on behalf of each of the parties;

"And now, on this the 10th day of December, 1927, as aforesaid, the parties appearing as hereinbefore stated, and the court still being of the opinion that he is bound by said verdict, although the court does hereby disapprove thereof in so far as the same relates to interrogatories numbered 2 and 3.

"The court finds, as a conclusion of law, based upon the verdict of the jury holding that V. V. Harris personally assumed the mortgages which were the subject-matter of this action, that the effect of such assumption so found by the jury is to make the mortgage of the plaintiff herein a first and valid lien on the real estate, which is the subject-matter of this action.

"It is therefore ordered, adjudged and decreed that the plaintiff have and recover of and from the defendants E. Highfill and V. V. Harris, and each of them, the sum of $4,750, together with interest thereon at the rate of eight per cent. (8%) per annum from December 18, 1923, and the further sum of $494.95 attorneys' fees, and the further sum of $403.84 on account of taxes paid, together with interest thereon at the rate of 10 per cent. per annum from June 27, 1924, and that the plaintiff have and recover of and from each and all of the defendants herein, and the intervener, Young Pepper, the costs of this action.

"It is further considered, ordered, adjudged, and decreed that the mortgage held by the plaintiff herein, which was executed by the defendant E. Highfill, and recorded in book 230, page 146, in the office of the county clerk of Oklahoma county, Okla., is a prior, superior, and paramount lien and claim to any and all mortgages, liens, claims, or interest asserted or claimed by any or either of the defendants and the intervener, Young Pepper, and is the only mortgage or lien existing against said premises. That plaintiff is entitled to a foreclosure of said mortgage for the purpose of paying all the indebtedness secured thereby, and if said indebtedness is not paid within six months from this date, including interest, attorneys' fees, taxes paid, and costs, an order of sale issue to the sheriff of Oklahoma county, commanding him to sell said premises, to wit: lots twenty-nine (29) and thirty (30), in block nine (9), Gault's addition to Oklahoma City, according to the recorded plat thereof, with all the improvements thereon and appurtenances thereunto belonging, without appraisement, and according to law, and that the proceeds therefrom be applied as follows:

"1. To the payment of the costs of said sale and the costs of this action.

"2. To the payment of any and all taxes that may be due and payable upon the said premises.

"3. To the payment of the sums herein found and decreed to be due the plaintiff, including principal, interest, attorneys' fees, and taxes paid.

"4. The remainder, if any, to be paid over to the court to be thereafter distributed as the court may direct.

"It is further ordered, adjudged, and decreed that, from and after the sale of said premises, as herein directed, each and all of the defendants and the intervener, Young Pepper, and any and all persons claiming, or to be claimed by, through or under them, or either of them, be and they are hereby perpetually foreclosed, barred, enjoined, and restrained from in any manner claiming or asserting any right, title, lien, claim, or equity, or estate in, to, or upon said premises or any part thereof.

"To all of which the defendant V. V. Harris, and the intervener, Young Pepper, except and exception is allowed.

"Sam Hooker, Judge."

On December 12, 1927, motion for new trial was filed by Harris and Young Pepper, requesting a setting aside of the findings of the jury and the judgment entered thereon. The first ground claimed it to be an equitable proceeding, and the interrogatories did not cover all the issues and were not binding, and no general verdict was sought, and that the jury was merely used in an advisory capacity, and the findings were ambiguous, and were not sustained by the evidence, and were disapproved by the court. Then followed the complaint of the evidence being insufficient, and newly discovered evidence, and errors of law occurring on the trial. On April 17, 1928, this motion was overruled and exceptions taken, followed by motion for new trial on the petition for new trial, its overruling and exception. In due time the entire record is brought here by case-made for review.

A review of the proceedings clearly indicates that this was a foreclosure proceeding of a mortgage on real estate, which ordinarily is classed as an equitable proceeding. In addition to that, a personal judgment was sought against Highfill, the original debtor, and also Harris, not by reason of any special contract of assumption in writing as required by the statute of frauds, but on a verbal guarantee arising out of conduct and the receipt of funds that should equitably be applied to the satisfaction of the debt of the principal debtor to the mortgagee. The ground of liability in such case is largely upon the trust idea, and a court of equity is called in to enforce such a trust by means of the ordinary equitable rules arising out of the equitable doctrine of adjustment, as laid down by text-writers on

equitable jurisdiction. See Bispham on Equity, ch. 6, part 2, entitled "Adjustment" (10th Ed.). See, also, section 156, "Foreclosure Suits," and section 44, "Equity looks upon that as done which ought to be done."

Most clearly in this case it was an equity case all the way through, especially by the time the parties were through with their allegations concerning the merger of the estates, and the deduction therefrom that the first mortgage was out of the way so that what was ordinarily a second mortgage would occupy the first place. A great deal of discussion is had in the briefs of the parties as to the effects of the interrogatories answered by the jury. We think, however, that a simple analysis of the constitutional provisions, and also the statutory provisions requiring a general verdict to be rendered by the jury, and also the statutory provisions requiring the amount of money to be recovered to be found by the jury, are conclusive in this matter.

The great weight of authorities cited in the briefs of both sides indicates that the answers of the jury in this case were merely advisory to the court, and that the final decision of the court itself is the matter to be had, and that the motion for a new trial, after the decision by the court pronouncing judgment against Harris and Pepper, was within time. As to whether or not there was an assumption by Harris of the mortgage debts, in the court of equity, is determined largely by the contract that was made. The warranty deed, which is a consummation of the contract, does not indicate that Harris assumed either mortgage, so as to be bound personally for it. It would have been very easy to have inserted such a clause in the warranty deed, and it would have been very natural so to have done if there had been such an assumption. Reliance in the pleadings was made on verbal assumption arising from conduct, and based on the fact that there was a fixed price in money equal to the amount of the mortgages retained in the hands of Harris to meet the mortgages.

The proposal, which all parties now concede was in writing, made by Highfill to Harris, was important. At the time of the trial that proposal was misplaced, though its existence was claimed by Harris, and its absence accounted for and proof was made of due diligence in finding it. After the hearing before the jury, it was found. Promptly application was made to the court to let it be admitted. The court refused to do this. We think that Harris was entitled to this, and we think that the court abused its discretion in not allowing this

to be done, especially when accompanying it was the statement of the real estate agent who prepared it, showing that the testimony of the witness Highfill, who above all men was interested in getting a decision to the effect that Harris had assumed these mortgages, was in fact untrue.

There does not appear to have been any denial of this conversation. Neither does it appear that the witness Highfill was not available for the use of plaintiff on this proposition when the motion to allow the case to be reopened was passed on, and when a motion for a new trial was passed on.

Most clearly all parties contemplated that during the time the case was under advisement it was before the court on all issues, as a part of the answers were unfavorable to both sides, and neither filed a motion for new trial. Naturally, with a Constitution worded as ours, section 21 of article 7, which is as follows:

"Sec. 21. Jury to return general verdict —court may direct special findings. In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings"

—a general verdict was required at the hands of the jury. Also, the statute itself contemplates a general verdict. Section 554, C. O. S. 1921, is as follows:

"554. Jury must assess amount of recovery. When, by the verdict, either party is entitled to recover money of the adverse party, the jury, in their verdict, must assess the amount of recovery."

Section 551, C. O. S. 1921, is as follows:

"551. General and special verdict. The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, and not the evidence to prove them; and they must be so presented as that nothing remains to the court but to draw from them conclusions of law."

Section 552, C. O. S. 1921, is as follows:

"552. General and special findings, when. In all cases the jury shall render a general verdict, and the court may in any case at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same."

We think that this case comes within the principles announced by this court in the case of Limerick v. Jefferson Life Ins. Co., 67 Okla. 178, 169 P. 1080, decided by this court on January 8, 1918, opinion by Justice Kane. In some of its aspects it is very closely akin to that case, though there are more equitable claims set out herein than there were in that case. It was there held that answers of the jury were merely advisory to the court, and it was the duty of the court to try the case.

As to the necessity for filing the motion for new trial within three days after the answer of these interrogatories is concerned, the authorities cited in the brief of the plaintiffs in error undoubtedly sustain the proposition most clearly that it was not necessary to file a motion for a new trial within three days after the making of findings in the manner here shown.

It will be observed that section 574, as to the time of application, prescribing three days, adds a clause about being unavoidably prevented as a limitation upon the three-day time. A case from this court is cited in both the 1910 Revision and also in the Compiled Statutes that, it seems to us, is controlling in reason. It is Severy v. Chicago, R. I. & P. Co., 6 Okla. 153, 50 P. 162. That case was decided on July 30, 1897, and prior to the Constitutional Convention. It was a strictly law case, being an action against the railroad for damages and injuries resulting in death. Special interrogatories were submitted, and also a general verdict. The motion for a new trial was not filed within three days of the rendition of the verdict or the facts found by the jury. The court there says:

"The statute providing for motions for new trial has reference to final judgments or orders, and a motion for a new trial is a useless proceeding until there is a judgment to set aside or vacate."

As applied to a case in equity, as this case appears to be, we think the rule as to filing motion for new trial after the court acts and renders judgment, as announced in the above case, is a proper one, and we therefore hold that it was not necessary to file a motion for new trial in this case until the court acted upon the findings. In its inception, in order to hold Harris personally responsible, it was necessary to invoke doctrines of equity. See Bispham on Equity, maxim No. 7, section 44, quoted above, and maxim No. 10, section 46, as follows:

"Equity imputes an intention to fulfill an obligation."

As applied to a mortgage foreclosure, and

procuring a personal judgment against the grantee, see Jones on Mortgages (7th Ed.) sec. 755, as follows:

"755. How mortgagee may take advantage of agreement. The ground upon which a mortgagee was at first allowed to take advantage directly of the usual clause in a deed, whereby the grantee assumes the payment of the mortgage, was stated to be that as between the parties to the deed the grantee thereby becomes the principal debtor for the mortgage debt, which has been allowed to him out of the purchase money, and the grantor is thenceforward merely a surety for the debt; and then, upon the familiar principle that the creditor is entitled by way of equitable subrogation to all securities held by a surety of the principal debtor, the mortgagee is entitled to the benefit of this agreement made by the purchaser, although he did not know of its existence till long afterward. A court of equity, having the mortgagor, the mortgagee, and the grantee before it, may adjust in one suit the rights of all the parties. In different forms this is, in substance, the doctrine of the cases. The right of the mortgagee to this remedy does not result from any fixed or vested right in him, arising either from the acceptance by the subsequent purchaser of the conveyance of the mortgaged premises, or from the obligation of the grantee to pay the mortgage debt as between himself and his grantor. The mortgagee's relief depends upon no original equity residing in himself, but upon the right of the mortgagor against his grantee, to which the mortgagee succeeds. Then he is allowed in equity to recover a deficiency of the grantee by a mere rule of procedure, going directly as a creditor against the grantee, in order to avoid circuity of action, and save the mortgagor, as an intermediate party, from being harassed for the payment of the debt, and then driven to seek relief over against his grantee, upon whom the liability would ultimately fall."

It appears that the court below conceded that the findings of the jury were not supported by the evidence, but felt bound by the fact that the motion for a new trial, and also a motion to reopen the case to let in written proof as to the offer that was submitted to Harris by Highfill, was out of time, and therefore the court was powerless to do anything else except enter a judgment against Harris and Pepper. Its decision was on an erroneous basis.

We agree that the evidence produced would not warrant the judgment of the court, and we think that it ought not to be allowed to stand. We think that the law announced in White v. Dougal, 60 Okla. 200, 159 P. 907, which is a common-law action for libel, is applicable here, and that it was the duty

of the trial judge to follow his conscience. In that case the syllabus is as follows:

"1. New Trial—Sufficiency of Evidence. It is the duty of the trial court, upon a motion for a new trial, which challenges the verdict, upon the ground that it is contrary to the evidence, to weigh the evidence and to approve or disapprove the verdict, and if the verdict is such that in the opinion of the trial court it should not be permitted to stand, and it is such that he cannot conscientiously approve it, and he believes it should have been for the opposite party, it is his duty to set it aside and grant a new trial.

"2. New Trial—Motion—Weight of Evidence. In passing on a motion for a new trial, it is the court, and not the jury, that must weigh and determine for itself the effect of the evidence. It cannot be said that a court approves a verdict when its reason and judgment rebel against the conclusions it expresses.

"3. New Trial—Sufficiency of Evidence—Verdict. Not only must the jury be satisfied of the righteousness of the conclusion to which it arrives, but, unless that conclusion meets the affirmative, considerate approval of the mind and conscience of the court, it should not, where challenged, be permitted to stand."

The opinion in that case, filed the 25th of July, 1916, rehearing denied September 12, 1916, cites the case that is reported in 63 Okla. 190, 163 P. 705, Chicago, R. I. & P. Ry. Co. v. Warren, by Mr. Justice Hardy. That, too, was a common-law case, and the third section of the syllabus is as follows:

"3. New Trial—Motion—Duty of Trial Court. It is the duty of the trial court upon a motion for new trial, which challenges the verdict upon the ground that it is contrary to the evidence, to weigh the evidence and to approve or disapprove the verdict, and, if the verdict is such that in the opinion of the trial court it should not be permitted to stand and in his opinion should have been for the other party, to grant a new trial.

Tested by the principles laid down in these cases, it appears to us that it was the duty of the trial court to award the new trial and to have assumed the responsibility of passing on the case, instead of holding that he was bound by the answers of the jury to the interrogatories.

The case is therefore reversed, with directions to grant a new trial and to proceed with the judgment on the whole case, in accordance with the views herein expressed.

LESTER, C. J., and RILEY, HEFNER, and CULLISON, JJ., concur. CLARK, V.

18

C. J., and SWINDALL, J., dissent. AN-
DREWS and McNEILL, JJ., absent.

CLARK, V. C. J. (dissenting). This cause
was commenced in the district court of Okla-
homa county, July 20, 1928, by V. S. Cook
Lumber Company filing its petition in said
court, seeking judgment on note and for
foreclosure of mortgage against V. V. Harris
and E. Highfill.

The petition was in the usual form, asked
judgment for $4,750 principal, with interest
and attorney fees. Plaintiff alleged said
mortgage was subject to a mortgage in the
sum of $15,000 given by W. E. Husselman
and wife to the Local Building & Loan As-
sociation of Oklahoma City.

Petition alleged that said property was
owned by Husselman, deeded to Highfill,
and that when Highfill bought said property
from Husselman, Highfill assumed and
agreed to pay said mortgage to the Local
Building & Loan Association.

Petition also alleged that Highfill executed
the note and mortgage sought to be foreclosed
to the plaintiff; that after the execution of
the same, on February 26, 1924, the defend-
ant Highfill conveyed the property described
in said mortgage to the defendant V. V. Har-
ris; that, in the transaction between the said
Highfill and Harris, the said Harris did de-
duct from the purchase price the indebted-
ness and obligations secured by the mort-
gage; that the defendant Harris assumed
and made his own the obligations of the de-
fendant Highfill to the plaintiff.

Thereafter, Young Pepper, upon applica-
tion, was permitted to intervene in said
cause. Young Pepper in his answer denied
all material allegations in plaintiff's petition
and called for strict proof; pleaded that he
was the owner and holder for value of the
$15,000 Local Building & Loan Association
note and mortgage; that the same for a
good and valuable consideration was, on
June 30, 1924, transferred, indorsed, and as-
signed to him, and asked for judgment
against the maker of said note and for the
foreclosure of the mortgage securing same.

Thereafter, on the 14th day of February,
1925, V. V. Harris filed his answer in said
cause, in which he denied each and every
material allegation contained in plaintiff's
petition except those specifically admitted;
denied that he assumed and agreed to pay
the obligation of Highfill; denied the amount
due plaintiff was deducted from the con-
sideration agreed upon by E. Highfill; de-
nied the amount due on the mortgage of the

loan association was deducted upon the con-
sideration agreed upon by E. Highfill.

On the 24th day of February, 1925, plain-
tiff filed an answer to the cross-petition of
Young Pepper and reply to answer of V. V.
Harris and Young Pepper, in which it denied
that Young Pepper was the owner of the
said note and mortgage in due course, but
alleged that the same was paid by V. V.
Harris, and that the defendant V. V. Harris
by the payment of said note and mortgage
had discharged the same, and prayed for
judgment decreeing plaintiff's mortgage to
be a first lien on the property involved, and
asked for judgment against V. V. Harris
and for foreclosure of plaintiff's mortgage
as a first lien on said property.

After the answer and replies, several in
number, were filed, issues were joined, plain-
tiff contending that Harris, when he pur-
chased said property, deducted the amount
of plaintiff's mortgage and the building and
loan mortgage from the purchase price, and
thereby became personally liable for the
same; and further contended that Harris
had paid and satisfied the Building & Loan
Association mortgage; and that Young Pep-
per had no right, title, or interest in said
note and mortgage so assigned to Young
Pepper; that the same was paid by V. V.
Harris and assigned to Young Pepper at the
instance and request of V. V. Harris, and
that the payment by V. V. Harris to the said
Building & Loan Association of said $15,000
mortgage satisfied the same, and that plain-
tiff's mortgage was the first lien and that
V. V. Harris had assumed and agreed to pay
the same by deducting the amount of said
note and mortgage from the purchase price
of the property at the time same was deeded
to V. V. Harris by Highfill; intervener, Young
Pepper, contends he was the owner of the
note and mortgage; that the same was
bought with partnership funds belonging to
himself and V. V. Harris; V. V. Harris con-
tends that he only bought the equity of the
property, did not assume the mortgage and
indebtedness against it, did not deduct the
amount of the indebtedness from the pur-
chase price, and was not personally liable
for the same.

On the issues joined the case came on for
trial before a jury, and the issues were sub-
mitted to the jury by the court by agreement
of counsel upon interrogatories or special
verdict, and answers returned, which are as
follows:

Interrogatory No. 1. "At the time Harris
and Highfill exchanged properties,—that is,
at the time Highfill deeded the property in-

volved in this cause to Harris,—did V. V. Harris assume and agree to pay the indebtedness due the Local Building & Loan Association and the V. S. Cook Lumber Company? Answer: No."

Interrogatories No. 2. "At the time referred to, was there an agreement between V. V. Harris and E. Highfill that the said V. V. Harris should not assume and become personally liable for the mortgages to the Local Building & Loan Association and the V. S. Cook Lumber Company? Answer: Yes."

Interrogatory No. 3. "At the time said property was traded by Highfill to Harris, was the same traded subject to the mortgages, and were the amounts of said mortgages deducted from the consideration for said property? Answer: Yes."

Interrogatory No. 4. "To whom was the note and mortgage held by the Local Building & Loan Association transferred,—that is, whether to Young Pepper for use and benefit of V. V. Harris, or to Young Pepper for the use and benefit of the partnership or business arrangement existing between Harris and Young Pepper? Answer: Transferred to Young Pepper for the use and benefit of V. V. Harris."

Plaintiffs in error, V. V. Harris and Young Pepper, did not object to the form of the verdict returned by the jury, and did not file a motion for a new trial within three days thereafter. The majority opinion holds that this was an equitable case and the answers of the jury to the interrogatories were merely advisory to the court.

Section 19 of art. 2 of the Constitution of Oklahoma provides, in part, as follows:

"The right of trial by jury shall be and remain inviolate."

This means the right of trial by jury as it existed at the time the Constitution was adopted.

Section 20 of art. 7 of the Constitution of Oklahoma provides:

"In all of the issues of fact joined in any court, all parties may waive the right to have the same determined by a jury, in which case the finding of the judge, upon facts, shall have the force and effect of a verdict by jury."

Section 21 of art. 7 of the Constitution of Oklahoma is as follows:

"In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings."

It cannot be seriously contended that, prior to the adoption of the Oklahoma Constitution, the right of trial by jury did not exist. The Supreme Court of the United States, speaking of the Bill of Rights, says:

"So jealous were the people that these rights highly prized might be denied them by implication that, when the original Constitution was proposed for adoption, it encountered severe opposition. And but for the belief that it would be so amended as to embrace them, it would never have been ratified." Ex parte Milligan, 4 Wall. 2, 120, 18 L. Ed. 281.

The court in the majority opinion has not construed the Constitution, it has overlooked it, and the result is that it is made more difficult to determine what cases, and in what class of cases, a citizen may be granted a right of trial by jury. But the most serious proposition is the holding that the verdict of the jury may be ignored by the court.

Of what value is a trial by jury guaranteed to the citizens of this state by the Constitution if the courts can evade or ignore the verdict of the jury? Would the citizens of Oklahoma adopt a Constitution that denied them the right of trial by jury? I am frank in saying they would not.

On the issues joined plaintiff was entitled to a trial by jury. This court has so held.

In the case of Choctaw Lumber Co. v. Waldock, 78 Okla. 233, 190 P. 866, this court in the first paragraph of the syllabus, said:

"In an action for the recovery of money on promissory notes, although involving the foreclosure of a mortgage on real estate, issue being joined as to the amount due, defendant is entitled to a trial by jury as a matter of right."

In the case of Brewer v. Martin, 40 Okla. 350, 138 P. 166, first paragraph of the syllabus, this court said:

"In a cross-petition for judgment on a note and foreclosure of the mortgage lien, when an issue is joined as to the amount due, the trial must be had before a jury, unless the jury is waived."

In the case of McCoy v. McCoy, 30 Okla. 380, 121 P. 176, in the fifth paragraph of the syllabus, this court said:

"In all civil actions for the recovery of money or for the recovery of specific real or personal property, every issue of fact arising from the pleadings must be tried by a jury, unless a jury be waived by both parties to the action, or a reference be ordered as prescribed by statute. All other issues of fact (except those arising in actions for the recovery of money or specific real or personal property) and all issues of

**20**

fact arising in equity proceedings, may be tried by the court subject to its power to submit the issues to a jury or order a reference."

In the case of Osage Oil & Refining Co. v. Interstate Pipe Co., 124 Okla. 7, 253 P. 66, in the sixth paragraph of the syllabus, this court said:

"Where action is commenced to recover money judgment upon a promissory note and to foreclose a mortgage securing the same, and in such action the jurisdiction of the court is invoked in ancillary proceedings by garnishment and by attachment, which can only be done in actions for the recovery of money (Comp. Stat. 1921, secs. 340, 354), such action is primarily a personal action for the recovery of money and not one in rem for foreclosure of mortgage."

In the case of Holmes v. Halstid, 76 Okla. 31, 183 P. 969, first paragraph of the syllabus, this court said: •

"In an action to recover judgment on promissory notes executed by defendants and for foreclosure of mortgage lien, made to secure their payment, where issue is joined as to the indebtedness due, the case is one properly triable before a jury as provided in sec. 4493, Rev. Laws 1910."

In case of Collins v. Industrial Savings Society, 78 Okla. 319, 190 P. 670. in the first paragraph of the syllabus, this court said:

"Under section 4993, Rev. Laws 1910, in a foreclosure proceeding where a personal judgment for money is sought by plaintiff against defendant, the defendant is entitled to a jury trial, unless a jury is waived or a reference ordered."

The majority opinion cites Limerick v. Jefferson Life Insurance Co., 67 Okla. 178, 169 P. 1080, as authority for the holding in the case at bar. At page 180, Okla. Reports, of that case, this court said:

"At any rate, it is obvious, from the statement of the proceedings hereinbefore fully set out, that the parties themselves and the trial court, without objection, treated the issues joined by the pleadings as of purely equitable cognizance, and so counsel have presented the cause to this court for review in their respective briefs. In these circumstances, even if this was originally a proper case for a trial by jury, requiring the return of a general verdict, the parties having treated it as one of purely equitable cognizance making no objection to the mode of trial in the trial court, they will not now be permitted to change the theory of their case. Nowlin v. Melvin, 47 Okla. 57, 147 P. 307; Harris v. First Nat. Bank of Bokchito, 21 Okla. 189, 95 P. 781; Border v. Carrabine, 24 Okla. 609, 104 P. 906."

The reasoning in that case, relied on in

the majority opinion, is against the result reached by the majority opinion, for the reason that plaintiffs in error made no objection to the interrogatories or special verdict of the jury and saved no exceptions to the same and filed no motion for a new trial.

This court, in the case of Stanard v. Sampson, 23 Okla. 14, 99 P. 796, in the third and fourth paragraphs of the syllabus said:

"3. A general verdict not having been returned, but answers to specific questions, both sides having filed and presented motions for judgment thereon, in the absence of a timely objection with proper exceptions and the assigning of such action as error in a motion for a new trial, the same will not be reviewed here.

"4. When the special answers or findings are returned, the jurors each being polled ad seriatim answered that the same as read by the clerk were his. No objection was made by either party, or request, that such special findings or answers should be signed, and each party filed and presented a motion for judgment in his or their favor on such special findings. Held, that this was a waiver of the irregularity in the foreman not signing the answers or findings as required by the statute."

This court, in the St. Louis Carbonating & Manufacturing Co. v. Lookeba State Bank, 59 Okla. 71, 157 P. 1046, in the first paragraph of the syllabus, said:

"Where a case is tried before the court, special findings of fact and conclusions of law made, no exceptions taken to either the findings of fact or conclusions of law, and the only error assigned is that upon the facts found, the court erred in its conclusions of law, this court is limited in its inquiry whether, based upon the facts found, the conclusions of law were correct."

At page 72 of the Okla. Reports in said case, this court said:

"No exceptions were reserved to either the findings of facts or conclusions of law, but plaintiff filed a motion for a new trial therein assigning that the decision and judgment of the court is contrary to law. There being no exception saved to the finding of facts, there is nothing before us to review except the record proper. The findings of fact stand, therefore, as conclusive or as in agreed case and it is for us to inquire only whether the conclusions of law upon the finding of facts were correctly pronounced."

In the case at bar, no exceptions were saved to the findings of the jury on the facts, and there being no exception and no motion for a new trial, the same were conclusive on the trial court.

This court, in Davis v. Grey, 39 Okla. 386,

134 P. 1100, in the first and second paragraphs of the syllabus, said:

"1. In an action of replevin the jury found for the plaintiff for a return of the animal in controversy. At the time of trial, the animal was in the defendant's possession. The verdict did not fix the value of the animal, nor was any objection made to the form of the verdict, until three days thereafter, when it was assigned as error in the motion for a new trial. Held, that, no timely objection to the form of the verdict having been made, no reversible error is presented.

"2. Under the ruling that, before a new trial will be granted because of newly discovered evidence, it must be made to affirmatively appear that the new evidence would be sufficient to probably produce a different result, a certain amount of discretion is vested in the trial court, and his ruling will not be reversed here, unless we are able to see that such evidence would probably produce a different result."

This court, in the case of the First Nat. Bank of Shawnee v. Oklahoma Nat. Bank of Shawnee, 29 Okla. 411, 118 P. 574, in the third and fourth paragraph of the syllabus, said:

"3. To secure a review of the evidence taken on a trial before a referee, a motion for a new trial must be filed in the trial court and not before the referee, and, except for the cause of newly discovered evidence, must be at the term the report is filed, and, unless unavoidably prevented, within three days thereafter; nor will filing of motions to secure a correction or annulment of the report stay the running of the statutory time so fixed.

"4. The findings of fact of a referee, where not challenged within a proper time and manner, become final, and exceptions to a judgment rendered thereon are of law, and not fact, and cannot be raised on a motion for a new trial."

The majority opinion states the trial court stated that it did not believe the answers to the interrogatories on which judgment was rendered were sustained by sufficient evidence. The court in its journal entry on page 373 of the case-made states as follows:

"In passing, I am of the opinion that the answers to the interrogatories propounded to the jury, in so far as questions Nos. 2 and 3 are concerned, are incorrect, contrary to the evidence, and the jury, in my judgment were not justified under the evidence in answering the interrogatories as they did and the answers to those interrogatories, are disapproved, and if the court had the power would be set aside for the reasons stated above. The court is of the opinion that a motion for new trial should have been filed in this case within three days after the jury

returned these answers into court, but the same was not done, and the court is now powerless to disturb these answers in any way, whatsoever. The court is further of the opinion that, under the record as it stands, the plaintiff is entitled to a judgment upon the interrogatories propounded to and answered by the jury."

So it is clear from the record and the journal entry in this cause that the court did not disapprove all the interrogatories and answers, but only disapproved 2 and 3. However, the court did approve the interrogatories and verdict of the jury, and in so doing followed the law as heretofore announced by this court without exception.

The evidence of Young Pepper and V. V. Harris, plaintiffs in error, supports the finding of the jury in interrogatory No. 4, which was that the Building & Loan Association note and mortgage was paid by V. V. Harris. Young Pepper testified that he lived at Franklin, Ky., that he was a brother-in-law of V. V. Harris, and at page 180 of the case-made was asked this question:

"Q. Doctor, did you on or about the 30th day of June, 1925, purchase a note and mortgage from the Local Building & Loan Association of Oklahoma City? A. Not to my knowledge. * * * Q. Do you, Doctor, have in your possession any correspondence between you and V. V. Harris with reference to any such transaction? A. No, sir."

He testified that in the existing partnership between him and V. V. Harris, for the last 15 or 20 years, he had no knowledge of such a transaction, and that no such purchase was made for him individually.

At page 225 of the record, Mr. Harris testified as follows:

"Q. And you purchased it for the partnership because you thought it was a good investment, didn't you? A. No, no; I didn't. Q. You didn't? A. No. I wouldn't say that. Q. Why did you purchase it? A. I purchased it for the partnership because the Building & Loan had the first mortgage, and I knew that if something was not done, they were going to foreclose, and I wanted to get it in hand where it wouldn't be foreclosed. Q. That is the reason you got it in the hands of the partnership? A. That's right. Q. In order to save you and your property? A. Absolutely. I might have bought it in my own name if it hadn't been for that."

This testimony of Young Pepper and V. V. Harris alone is sufficient to support the finding of the jury that the building and loan mortgage was paid by V. V. Harris to protect his own property, and the assignment made to Young Pepper was to defeat the note and mortgage of the V. S. Cook Lumber Company. This is what the jury found, and

under the evidence in this record the jury would not be justified in finding anything else, and if this was an equity case, which it is not, no court of conscience would permit V. V. Harris to pay and satisfy the first lien on his property when such lien was part of the purchase price, and then assign it to his brother-in-law and have the same foreclosed in order to defeat the second lienholder. A court of equity would not be a party to such a scheme or approve such a transaction.

The judgment of the trial court was in all things correct except as to interrogatory No. 3, wherein the jury found that, at the time said property was traded by Highfill to Harris, the same was traded subject to the mortgages and the amount of said mortgages was deducted from the purchase price for said property. This finding of the jury is supported by competent evidence, and no exception was saved to said finding by the jury, and no motion for new trial having been filed, this court is limited in its inquiry, based upon the facts found. Were the conclusions of law correct? The court reached the conclusion from this finding of fact that the plaintiff was entitled to a personal judgment against Harris for the amount of its note and for foreclosure of its mortgage, which was a first lien on the property involved.

It is my opinion the finding that the plaintiff was entitled to a personal judgment against Harris is erroneous for the reason that there was no contractual relation between Harris and the plaintiff, and although Harris did deduct the amount of the plaintiff's mortgage from the purchase price, this was an obligation to Highfill and not to plaintiff.

The judgment of the trial court should be affirmed in all things except the personal judgment against V. V. Harris. Said judgment should be modified by vacating said personal judgment against V. V. Harris and in all other respects affirmed.

SWINDALL, J. I concur in this dissent.